### No. 39,785

STATE OF KANSAS, ex rel. HAROLD R. FATZER, as Attorney General of the State of Kansas, *Plaintiff,* v. OWEN MARTIN, HOMER K. THOMPSON and L. C. HOLT, as Pretended Members of Rural High School Board of a Pretended Rural High School District No. 4, Pretended to have been established in Bourbon County, Kansas, on August 10, 1954, *Defendants.*

(289 P. 2d 745)

Opinion filed November 12, 1955.

*Douglas Hudson,* of Fort Scott, argued the cause, and *Harold R. Fatzer,* attorney general, and *Howard Hudson* and *Douglas G. Hudson,* both of Fort Scott, were with him on the briefs for the plaintiff.

*Payne H. Ratner,* of Wichita, argued the cause, and *Louise Mattox, Payne H. Ratner, Jr., Russell Cranmer, Dale B. Stinson, Jr., Keith Eales, Cliff W. Ratner, William A. Fry, A. Wayne Murphy, Ray A. Overpeck, Bernard V. Borst, H. K. Greenleaf, Jr.,* and *D. Clifford Allison,* all of Wichita, were with him on the briefs for the defendants.

The opinion of the court was delivered by

ROBB, J.: This was an original proceedings in quo warranto filed on the relation of the attorney general challenging the validity of the organization of rural high school district No. 4 in western Bourbon county, and the authority of the defendants to continue to act as board members thereof. All of the territory involved is located in Bourbon county.

By way of introduction or as a history of this matter, we will state that this is the second attempt on the part of the residents of western Bourbon county to organize this school district. Their first effort, which was started in 1951, failed because the city of Bronson, a third class city with a population of 428 located on the extreme west side of the district, was included in the proposed district and the voters of Bronson defeated the establishment of the district by a vote of 42 in favor and 178 against. (*State, ex rel., v. Martin,* 175 Kan. 160, 258 P. 2d 1000.)

We have before us a motion of the defendants to dismiss this action because the question has become moot by reason of the fact that the proceedings already had coupled with an election have brought Redfield into the district by the will of the people. This would indeed be a prompt way to dispose of the case, but we must first determine whether there was a legal high school district which Redfield could join or become a part of. Therefore, the motion to dismiss is overruled.

On March 11, 1955, this court appointed T. D. Hampson of Fredonia as commissioner in this case to hear and receive evidence and to make findings of fact and conclusions of law. His findings of fact and conclusions of law, in the main, have been approved and are those hereafter included in this opinion.

A petition for the organization of rural high school district No. 4 was filed in the office of the county clerk on July 8, 1953. Enumerators were appointed on July 10, 1953, and the petition was certified as sufficient by the board of county commissioners on February 1, 1954. Notice for hearing of objections before the county superintendent of public instruction, setting the time and place, and fully

describing the territory and boundaries of the district, was published in a Bourbon county newspaper of general circulation on February 3, 1954. The hearing was held on February 11, 1954, and the territory and boundaries were approved by the county superintendent. Notice of approval was filed in the county clerk's office on February 13, 1954, and the state superintendent affirmed the county superintendent's order and the boundaries on July 7, 1954.

An election on the proposition to organize the district was held on August 10, 1954. Notices thereof, in which the boundaries were described, were posted on the front door of each school building within the boundaries and published in a legal newspaper in the county on July 16 and 17, 1954, at least twenty-one days before the election. The election as held, the vote canvassed by the board of county commissioners, and the proposition to organize the district was certified by the board's resolution on August 13, 1954, as carried in the rural district and also in the third class city of Uniontown. The resolution also provided that it be reported by the county clerk to the county superintendent that the proposition had carried. This was all done in compliance with G. S. 1953 Supp. 72-3538. There was no mention in any of these proceedings of any city containing 100 population except the city of Uniontown, which is located near the center of the district.

The third class city of Redfield, with a population of 204, is situated in the east part of the district but there is no mention of Redfield in the resolution of the county commissioners or anywhere else in the proceedings. The boundaries of the proposed district included a tract of ground 150 feet by 1,190 feet along and inside the south city limits of Redfield. This tract consisted of four parcels all of which were parts of larger tracts and the greater portions of which were outside the city limits of Redfield. There was nothing in the appearance of the land to show part of it was within and part outside of the city of Redfield. This strip of land 150 feet by 1,190 feet had been annexed to Redfield by the then county commissioners' order dated June 2, 1914. Seven qualified electors of Redfield lived on the tract in question. No provision was made for a separate vote to be taken and counted for them and none of the seven electors voted on the proposition to organize the district.

The defendants were elected as members of the board of the district at a district meeting called by the county superintendent on September 8, 1954. Pursuant to notice, a majority of the electors

approved a bond issue for a high school building at an election on November 30, 1954.

The only issue raised in the case is whether the same problem confronts this court that was present in the previous case. The plaintiff contends the situation is identical and the defendants claim a different situation exists. We are constrained to agree with the defendants.

In the previous case there was a definite intention to take all of the city of Bronson into the district, provision was made for the electors of that city to vote on the proposition, and the vote of Bronson defeated the proposed high school district.

As previously stated, in this case the county commissioners had failed to record in the office of the register of deeds their resolution whereby they annexed the 150 feet by 1190 feet of land in question to Redfield and neither was the annexation ever shown on the official plat of the city of Redfield. G. S. 1909, § 725, provided:

"That whenever the city council of any city of the . . . third class desire to enlarge the limits thereof from the territory adjacent thereto, said council shall . . . present a petition to the board of county commissioners . . . Upon such petition being presented . . . they shall proceed to hear testimony . . . and upon such hearing, if they shall be satisfied that the adding of such territory to the city will be to its interest, and will cause no manifest injury . . . they *shall* so find; . . . the city council . . . may add such territory to said city by an ordinance. . . ." (Our emphasis.)

### G. S. 1909, § 727, provided:

"Any decision of such board of county commissioners extending the corporate limits *shall be spread at length* upon the journal of the county, and a certified copy thereof shall be recorded by the register of deeds of such county." (Our emphasis.)

After the organizers of the district had examined the records they were required to examine, which records did not disclose the annexation of the strip of land to the city of Redfield, they were not required to do anything further. The actions on the part of the organizers showed that they did not intend to include any part of Redfield within the perimeter of the proposed district. On the contrary, it appears from a map included in the record that there is a definite indention along the east perimeter line which could only have been made for the purpose of cutting Redfield out of the proposed district. Thus the only conclusion that can

be reached in this case is that the strip of land was included by mistake, accident and inadvertence which was not so much the fault of the organizers of the district as it was the fault of the county commissioners who annexed the land because they failed to comply with the mandatory sections of the statutes in effect at that time.

We cannot conclude that the inclusion of this strip of land was intentional. This is in harmony with our decision in *State, ex rel., v. Lane Rural High School District,* 173 Kan. 1, 243 P. 2d 232, where the detailed description was inexcusably garbled and inaccurate when compared with the correct perimeter description in the publication notice of the election. We do not consider the irregularity sufficient to vitiate the organization of the district or the election. This view has been taken by our court because, even though quo warranto is not the ruthless and inexorable corrective as it existed in the middle ages, it is no longer a writ of right and the courts are recognized to have broad judicial discretion which should be exercised in issuing or withholding it. (*State, ex rel., v. Grenola Rural High School Dist.,* 157 Kan. 614, 619, 142 P. 2d 695; *State, ex rel., v. Lane Rural High School District,* supra.)

This court recognizes the fact that there is a need for modern school facilities in this section of Bourbon county which will afford better sanitation and make it possible for the students in the district to receive some of the advantages of present day education at the high school level. It is not necessary to show here all the facts pertaining to how much work and effort were put forth in organizing this district, especially after the first failure. These things standing alone and separately could not constitute justification for holding the organization proper, but they are matters to be considered along with others herein contained.

If it were ever true, it certainly should be so in this case, that no useful purpose would be served by upsetting all proceedings attending the organization of this rural high school district and ousting the members of this board from the exercise of their duties as such.

In addition to what has already been said defendants have shown the comparison in the size and value of the strip of land 150 feet by 1,190 feet as compared with the size and value of the rest of the land in the perimeter of the district and have also compared it with

the relative size of Redfield. This brings up the rule of *de minimis non curat lex,* but it is not necessary to probe into that field in view .of what has already been said.

We agree with the commissioner that the small strip of land inadvertently included in the perimeter description of the district should be excluded from the district and it is so ordered.

In view of the foregoing, the remedy of quo warranto should be denied. It is so ordered. Judgment is for the defendants for costs.

HARVEY, C. J., dissents.