STATE of Utah, Plaintiff
and Respondent,

v.

Richard Dee THOMAS, Defendant
and Petitioner.

No. 970049.

Supreme Court of Utah.

May 22, 1998.

Jan Graham, Atty. Gen., Joanne C. Slotnik, Asst. Atty. Gen., Salt Lake City, for Plaintiff and Respondent.

Bel-Ami Demontreux, Salt Lake City, for Defendant and Petitioner.

RUSSON, Justice:

We granted certiorari to review the Utah Court of Appeals' decision that our holding in *Salt Lake City v. Ohms*, 881 P.2d 844 (Utah 1994) (prohibiting court commissioners from performing core judicial functions), does not apply to the issuance of a search warrant by a court commissioner. We are also asked to review the court of appeals' refusal to address defendant's claim that the trial court erred in denying his motion to suppress a positive eyewitness identification made from a suspect photo array. The court of appeals' refusal was based upon inadequate briefing. *State v. Thomas*, No. 960170–CA, slip op. (Ct.App. November 29, 1996) (memorandum decision), *cert. granted*, 937 P.2d 136 (Utah 1997). We reverse as to the applicability of *Ohms* and affirm as to the refusal to address the photo array issue.

## FACTS

On the night of June 30, 1993, an armed robbery was committed at a fast food restaurant in Salt Lake County, Utah. At gun point, the assailant ordered the manager to put all the money into a bag and to accompany him to the parking lot. The manager was then released, and the assailant ran away. Shortly thereafter, police officers arrived on the scene and began their investigation of the robbery. As part of their investigation, they received a lead on a suspect who was reported to be in a nearby apartment. The suspect was defendant Richard Dee Thomas. When the police arrived at the apartment, a confrontation ensued with Thomas. The officers forced entry into the apartment but retreated after Thomas threatened to kill a hostage.[1] Then, while some officers guarded the apartment, others went to obtain a search warrant.

During the early morning of July 1, 1993, Third District Court Commissioner Frances M. Palacios issued a search warrant. After obtaining the search warrant, the police officers returned to the scene. Shortly thereafter, Thomas surrendered, and the apartment was searched. During the search, the police seized evidence linking Thomas to the crime. On July 2, 1993, the manager of the restaurant was shown a photo array of six men and identified Thomas as the man who committed the robbery. During interrogation and after Thomas waived his *Miranda* rights, Thomas confessed to committing the armed robbery. On July 6, 1993, the State filed an information against Thomas, charging him with aggravated robbery, a first degree felony, in violation of Utah Code Ann. § 76–6–302. Thomas pleaded not guilty.

Prior to trial, Thomas moved to suppress evidence obtained during the search. Thomas cited *Salt Lake City v. Ohms* and argued that the issuance of a search warrant constitutes a fundamental court function and thus the search and seizure were unconstitutional in that the court commissioner who issued the search warrant lacked the authority to do so. This motion was denied. Thomas also moved to suppress eyewitness identification, arguing, inter alia, that the photo array of the six men was unduly suggestive. This motion was also denied. On August 4, 1995, a jury convicted Thomas as charged.

On appeal to the Utah Court of Appeals, Thomas asserted, inter alia, that the trial court erred when it denied Thomas's motion

---

1. It later turned out that there was no hostage.

to suppress evidence and his motion to suppress eyewitness identification. In an unpublished memorandum decision, the court of appeals affirmed the trial court's rulings. Thomas then petitioned this court for certiorari review, and we granted the petition.

## ANALYSIS

 "On certiorari, we review the decision of the court of appeals, not the decision of the trial court." *State v. Harmon*, 910 P.2d 1196, 1199 (Utah 1995). "We review the court of appeals' decision for correctness and give its conclusions of law no deference." *Carrier v. Pro-Tech Restoration*, 944 P.2d 346, 350 (Utah 1997).

## I

The first issue we address is whether the court of appeals erred when it held that *Salt Lake City v. Ohms*, 881 P.2d 844 (Utah 1994), did not apply to the issuance of a search warrant. Before the court of appeals, Thomas argued that court commissioners do not have the authority to issue search warrants. In a rather scant summary disposition of the issue, the court of appeals disagreed, simply stating:

> Thomas relies on *Salt Lake City v. Ohms* for the proposition that "the Utah Supreme Court, on August 18, 1994, held that Utah Code Annotated § 78-3-31 (1992), that gave to Utah court commissioners their powers was unconstitutional." In addition to having prospective application, Thomas's reading of *Ohms* is too broad and does not apply to the issuance of a search warrant.

*Thomas*, slip op. at 1 (citation omitted).

Although the court of appeals should have elaborated to make its ruling more clear, the essence of its holding appears to be that (1)

*Ohms* had prospective application and therefore was inapplicable to Thomas's case because the search warrant pre-dated our ruling in *Ohms*; (2) Thomas's assertion that court commissioners have no power was too broad a reading of *Ohms* since only the exercise of core judicial functions by court commissions was prohibited; and (3) *Ohms* did not apply because the issuance of a search warrant is not a core judicial function. We address these holdings in turn.

 In *Ohms*, Ohms had been charged with giving false or misleading information to a police officer, a class C misdemeanor, in violation of Salt Lake City Ordinance § 11.04.100. Ohms was tried, convicted, and sentenced by a court commissioner pursuant to Utah Code Ann. § 78-3-31(6)(a) (1992).[2] Ohms appealed to this court, arguing that a court commissioner did not have the authority to enter a final judgment of conviction and impose sentence, as such was an unconstitutional exercise of ultimate judicial power. We agreed and held that court commissioners cannot exercise a judge's ultimate judicial power or, in other words, cannot perform core judicial functions. In so holding, we found significant the fact that "[c]ourt commissioners are employees of the judiciary, not duly appointed judges," and that commissioners are not subject to the "constitutional checks and balances" to which duly appointed judges are subject. *Ohms*, 881 P.2d at 851. We thus found section 78-3-31(6)(a) unconstitutional because it delegated the core judicial functions of entering final judgment and imposing sentence to a court commissioner. Under the doctrine of de facto authority,[3] we validated the past actions of court commissioners who had engaged in the unconstitutional exercise of core judicial functions.

---

2. Utah Code Ann. § 78-3-31(6)(a) (1992) stated:

 The court commissioner may accept pleas of guilty or no contest, impose sentence, and enter final judgment in misdemeanor cases. Upon the informed consent of the defendant, the court commissioner may conduct a jury or nonjury misdemeanor trial in accordance with the law. Upon conviction, the commissioner may impose sentence and enter final judgment. The judgment entered by the commissioner

 shall be the final judgment of the court for all purposes, including appeal.

3. Under this doctrine, actions performed by those without actual authority are validated when they are performed by one who, under the color of law, " 'assumes to exercise official authority, is reputed to have it, and the community acquiesces accordingly.' " *Ohms*, 881 P.2d at 854 (quoting *Hussey v. Smith*, 99 U.S. 20, 24, 25 L.Ed. 314 (1878)).

## A. Prospective Application

■ Given only the court of appeals' conclusive statement, we assume that it agreed with the State's argument that Thomas was precluded from challenging commissioner actions because we limited *Ohms* to prospective application and the search warrant was issued some fourteen months prior to *Ohms*. Indeed, a review of the record reveals that the search warrant was issued on July 1, 1993, over thirteen months prior to the *Ohms* decision. However, while we stated in *Ohms* that "actions taken by commissioners in the past are not subject to challenge since court commissioners in those cases acted with de facto authority," we declined to apply the de facto doctrine to Ohms as he had "sustained the burden of attacking an unconstitutional statute." To hold otherwise and deprive an appellant of "the fruits of victory" would have the effect of "discouraging challenges to statutes of questionable validity." *Ohms*, 881 P.2d at 854–55. In the case before us, by arguing that the issuance of a search warrant is a core judicial function, Thomas, like Ohms, is attacking the constitutionality of a court commissioner's exercise of power. Thus, if Thomas sustains this burden, and we hold that he does, then the de facto doctrine would not apply to him for the same reasons it did not apply to Ohms. As in *Ohms*, our decision today is prospective, and any search warrants issued by court commissioners in the past are valid, as they were issued with de facto authority. *Id.*

## B. The Power of Court Commissioners

■ Thomas argued before the court of appeals that our decision in *Ohms* held section 78-3-31 unconstitutional and thus "deconstitutionalized court commissioners." The court of appeals dismissed this argument as going beyond what was actually held in *Ohms*. The court of appeals is correct. In *Ohms*, we clearly stated that section 78-3-31 violated the Utah Constitution *"to the extent* that it purports to vest ultimate judicial power of courts of record in persons who have not been duly appointed as article VIII judges." *Id.* at 855 (emphasis added). We also acknowledged that court commissioners "may perform many important functions in assistance to courts" such as conducting fact finding hearings, holding pretrial conferences, and making other recommendations to judges. In fact, we specifically stated that "our decision in no way affects the authority and functions that court commissioners have enjoyed for over thirty years and will undoubtedly continue to enjoy in the future." *Id.* at 851–52 n. 17. Nowhere in *Ohms* did we "deconstitutionalize" the court commissioner system.

## C. Issuance of a Search Warrant as a Core Judicial Function

The court of appeals also held that *Ohms* did not apply because the issuance of a search warrant is not a core judicial function. This is a question of first impression.

In *Ohms*, we stated that core judicial functions include (1) "'the power to hear and determine controversies between adverse parties and questions in litigation,'" (2) "'the authority to hear and determine justiciable controversies,'" (3) "*'the authority to enforce any* valid judgment, decree or *order,'"* and (4) "all powers that are 'necessary to protect the fundamental integrity of the judicial branch.'" *Id.* at 849 (citations omitted) (emphasis added). Core judicial functions do not include functions that are generally designed to "assist" courts, such as conducting fact finding hearings, holding pretrial conferences, and making recommendations to judges. In these instances, the commissioners' actions are reviewable by a judge; thus, ultimate judicial power remains with the judge. *Id.* at 851 n. 17.

■ Turning to the present case, it is well established that a search warrant is an order. *See* Utah Code Ann. § 77–23–201 (1995) (defining search warrant as "an order issued by a magistrate in the name of the state and directed to a peace officer," describing the search and property to be seized); 1933 Revised Statutes of Utah § 105–54–1 (stating that "[a] search warrant is an order in writing, in the name of the state, signed by a magistrate and directed to a peace officer, commanding him to search for personal property and bring it before the magistrate"), *quoted in Allen v. Holbrook*, 103 Utah 319, 135 P.2d 242, 247–48 (1943); *see also* 79

C.J.S. *Searches and Seizures* § 128 (1995). When a judge issues to law enforcement an order to search and seize, the judge simultaneously exercises the power and authority to enforce such an order, because once armed with an issued warrant, law enforcement proceeds to search and seize at will. Thus, because a search warrant is an order and the issuer possesses the authority to enforce the order, the issuance of a search warrant is a core judicial function, which commissioners lack the authority to perform.

This holding is buttressed by the fact that the right to be free from unreasonable searches and seizures embodied in the Utah and United States Constitutions[4] is one of the most fundamental and cherished rights we possess. *See, e.g., Winston v. Lee,* 470 U.S. 753, 758, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985) ("The Fourth Amendment protects . . . 'the right to be let alone—the most comprehensive of rights and the right most valued by civilized men.' " (quoting *Olmstead v. United States,* 277 U.S. 438, 478, 48 S.Ct. 564, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting))); *Camara v. Municipal Ct.,* 387 U.S. 523, 528, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) ("The Fourth Amendment thus gives concrete expression to a right of the people which is 'basic to a free society.' " (quoting *Wolf v. Colorado,* 338 U.S. 25, 27, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949))); *Harris v. United States,* 331 U.S. 145, 150, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947) ("This Court has consistently asserted that the rights of privacy and personal security protected by the Fourth Amendment ' . . . are to be regarded as of the very essence of constitutional liberty; and that the guaranty of them is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen . . . .' " (quoting *Gouled v. United States,* 255 U.S. 298, 304, 41 S.Ct. 261, 65 L.Ed. 647 (1921))), *overruled in part by Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Given the magnitude of the right at risk when a search warrant is issued, we have no difficulty in granting the issuance of a search warrant core function status.

■ The State proffers two arguments as to why court commissioners have the authority to issue search warrants. First, the State claims that commissioner authority to issue search warrants stems from their status as magistrates, who possess the clear statutory grant of power to issue search warrants. Section 77–1–3 does define a magistrate as "a justice or judge of a court of record or not of record or a commissioner of such a court appointed in accordance with Section 78–3–31," and section 78–7–17.5(1)(c) does vest authority in magistrates to "issue . . . warrants of search." However, as we have outlined above, *Ohms* held that under the Utah Constitution core judicial functions can be performed only by duly appointed judges. Thus, in accordance with our holding today, only duly appointed judges can issue search warrants. Court commissioners are not judges, and thus they cannot issue search warrants. Any attempt by the legislature to statutorily confer the power to issue search warrants upon court commissioners would be null and void as a violation of the Utah Constitution. We do not hold the above-stated statutes unconstitutional, however, because section 78–7–17.5(1) clearly grants magistrates the power to issue search warrants, "[e]xcept as otherwise provided by law."

Second, the State argues that the issuance of a search warrant is not a core judicial function involving the exercise of ultimate judicial power but rather involves a nonadjudicative preliminary matter that simply assists the court in moving the case along. Certainly, many actions are capable of "assisting" courts, including the performance of core judicial functions. Thus, determining whether a particular action assists a court does not end the inquiry. As we have noted, functions that commissioners can constitu-

---

4. The Fourth Amendment to the United States Constitution, which is practically identical to article I, section 14 of the Utah Constitution, states:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

tionally perform are those that constitute recommendations or other functions that are reviewable by a judge. Issuing a search warrant cannot be characterized as either a recommendation or an action that is reviewable by a judge. The commissioner in this case did not recommend to the judge that the warrant be issued but rather issued it herself. Similarly, the decision to issue was not subject to review by a judge with the possibility of disallowing the search. Rather, the order to search and seize was issued and then executed immediately thereafter. Furthermore, while the issuance of a search warrant is a "preliminary" decision when looking at a criminal prosecution as a whole, it is a final decision as to whether a search will occur. Thus, while issuing a search warrant does not rise to the level of finality as entering judgment and imposing sentence, as was disallowed in *Ohms*, it is sufficiently final to establish it as a core judicial function. We thus hold that because the issuance of a search warrant is a core judicial function, which cannot be performed by a court commissioner, the court of appeals erred when it held that *Ohms* did not apply.

Thomas also objects to a court commissioner presiding over his first appearance. He argues that, similar to issuing a search warrant, presiding over a first appearance is a core judicial function that commissioners lack the authority to perform. However, Thomas fails in his brief to identify or describe this hearing or discuss what the commissioner's actions were and how these actions constituted the exercise of core judicial functions. Thomas cited only to the Third Circuit Court's docket sheet stating that a first appearance took place. A review of the record reveals no further evidence of the first appearance. It does show, however, that Thomas's preliminary hearing was held before Circuit Court Judge Phillip K. Palmer and that it was he who bound Thomas over for trial in Third District Court. Rule 24(a)(9) of the Utah Rules of Appellate Procedure requires an appellant's argument to contain the "reasons of the appellant with respect to the issues presented . . . with citations to the . . . parts of the record relied on." Thomas has failed to comply with these requirements. His brief is totally inade-

quate, and therefore, we decline to address this issue.

II

■ The second issue we address is whether the court of appeals erred when it declined to address Thomas's claim that the trial court erred in denying his motion to suppress a positive eyewitness identification made from a suspect photo array because Thomas failed to adequately brief the issue. The court of appeals stated:

> Thomas ignores several decisions addressing proper challenges to photo array cases. *See State v. Lopez,* 886 P.2d 1105, 1111 (Utah 1994); *State v. Thamer,* 777 P.2d 432, 435 (Utah 1989). Because Thomas fails to adequately brief this argument, it is without merit and we decline to address it. *See* Utah R.App. P. 24(a)(9) (requiring "citations to the authorities [and] statutes . . . relied on").

*Thomas,* slip op. at 3.

A review of the record reveals that Thomas devoted four pages of his brief before the court of appeals to his photo array argument. However, almost three of these pages consisted of direct quotes from the trial transcript. On the basis of the trial testimony, Thomas then asserted that the photo array was overly suggestive. His only reference to any legal authority is contained in the bald assertions that the

> identification also taints any other identification of Mr. Thomas in violation of due process under the Fifth and Fourteenth Amendments to the United States Constitution. The overly suggestive photo array also violates Art. I, § 7 of the Utah State Constitution (Due process); *see also State v. Ramirez,* 817 P.2d 774 (Utah 1991).

These statements concluded his argument.

■ It is well established that a reviewing court will not address arguments that are not adequately briefed. *State v. Herrera,* 895 P.2d 359, 368 n. 5 (Utah 1995) (refusing to address defendant's state due process argument where argument entailed only superficial statement concerning Utah's unique history and reference to another part of de-

fendant's brief); *State v. Wareham*, 772 P.2d 960, 966 (Utah 1989) (declining to rule on issue where defendant's brief "wholly lack[ed] legal analysis and authority to support his argument"); *State v. Amicone*, 689 P.2d 1341, 1344 (Utah 1984) (declining to rule on separation of powers argument where argument was not supported by any legal analysis or authority).

In deciding whether an argument has been adequately briefed, we look to the standard set forth in rule 24(a)(9) of the Utah Rules of Appellate Procedure. This rule states that the argument in the appellant's brief "shall contain the contentions and reasons of the appellant with respect to the issues presented ... with citations to the authorities, statutes and parts of the record relied on." Implicitly, rule 24(a)(9) requires not just bald citation to authority but development of that authority and reasoned analysis based on that authority. We have previously stated that this court is not " 'a depository in which the appealing party may dump the burden of argument and research.' " *State v. Bishop*, 753 P.2d 439, 450 (Utah 1988) (quoting *Williamson v. Opsahl*, 92 Ill.App.3d 1087, 48 Ill.Dec. 510, 511, 416 N.E.2d 783, 784 (1981)).

 In his brief to the court of appeals, Thomas did cite to the Fifth and Fourteenth Amendments of the United States Constitution, to article I, section 7 of the Utah Constitution, and to the case of *State v. Ramirez*. However, this is all he did. Analysis of what this authority requires and of how the facts of Thomas's case satisfy these requirements was wholly lacking. The court of appeals also noted, "Thomas ignores several decisions addressing proper challenges to photo array cases." *Thomas*, slip op. at 3. While failure to cite to pertinent authority may not always render an issue inadequately briefed, it does so when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court. Because of Thomas's lack of analysis, the photo array issue was inadequately briefed and the court of appeals was justified in declining to address it.

## CONCLUSION

Accordingly, we reverse the court of appeals' holding that *Salt Lake City v. Ohms* does not apply to the issuance of a search warrant. Issuing a search warrant is a core judicial function involving ultimate judicial power. We remand the case to the court of appeals for a determination as to whether the trial court's failure to suppress evidence obtained from the search constituted reversible error. We further affirm the court of appeals' holding that Thomas inadequately briefed the photo array issue.

HOWE, C.J., DURHAM, Associate C.J., and STEWART and ZIMMERMAN, JJ., concur in Justice RUSSON's opinion.