2001 UT 62

**Lora M. GREEN, Plaintiff
and Appellant,**

v.

**Lloyd LOUDER and Marlene Murray,
Defendants and Appellee.**

No. 980277.

Supreme Court of Utah.

July 27, 2001.

Jackson Howard, Kenneth Parkinson, Leslie W. Slaugh, Provo, for plaintiff.

David N. Mortensen, R. Phil Ivie, Provo, for defendant.

DURHAM, Justice:

¶ 1 This case arises from an auto accident in which the plaintiff Lora M. Green suffered personal injuries. Green sued Marlene Murray, the driver of the vehicle in which she was a passenger, and Lloyd Louder, the driver of the other vehicle, for negligence. Green settled her claim with Murray. A jury found Louder not negligent and a judgment was entered accordingly. Green's re-

1. Degloving refers to the skin being pulled off the underlying tissue.

quest for a new trial was denied; therefore she appealed to this court. We affirm.

## BACKGROUND

¶ 2 On July 13, 1995, Green was a passenger in a 1987 Dodge truck driven by her mother, Murray, which was heading north on SR–189 in Provo, Utah. Murray believed she was traveling on a divided highway and moved to what she thought was her left-hand lane. Actually, Murray was traveling on the wrong side of the road on a two-lane highway. Murray realized her mistake when she saw Louder's truck, towing a boat and trailer, proceeding toward her in the same lane. Murray turned to get back into her lane, but Louder, in an effort to avoid a collision in his lane, also turned into Murray's lane. Their vehicles collided head-on. The collision caused both vehicles to go off the road.

¶ 3 As a result of the accident, Green suffered a compound fracture of her left wrist and degloving [1] on her arms and legs. Despite surgery and skin grafting, Green lost function of her wrist and suffered scarring. Green also claimed the injuries of the accident accelerated the effects of pre-existing arthritis and lupus, and left her arm disabled between thirty and thirty-five percent.

¶ 4 Green filed an action for negligence against both Louder and Murray on October 12, 1995. Prior to filing suit, Green filed claims against Murray's insurance policy with Horace Mann Insurance Co., Louder's insurance policy with State Farm Insurance Co. (State Farm), and her own under-insurance policies, also with State Farm. On February 16, 1996, Green accepted $25,000 from Horace Mann—the limits of Murray's insurance policy—in return for a release relieving her mother of liability.

¶ 5 Louder then amended his answer to include a cross-claim against Murray. Louder later stipulated to a dismissal of all claims for damages against Murray, but reserved the right to apportionment of fault pursuant to the Utah Liability Reform Act.[2] State

2. The Liability Reform Act allows trial courts "when requested by any party ... [to] direct the jury ... to find separate special verdicts determining the total amount of damages sustained

Farm offered Green $25,000 in settlement of her claims against Louder—who had a $50,000 policy—but made no offers on her own under-insurance policies. Eventually this matter was set for trial in January of 1998.

¶ 6 Subsequently, Green filed a complaint against State Farm alleging bad faith for failing to settle her claims. On January 6, 1998, Green moved to join her case against State Farm with this case. She argued that State Farm was the real party in interest because it had assumed liability for any verdict against Louder in this matter and also provided her under-insured coverage. The court denied this motion.

¶ 7 Two weeks before trial, Green moved to compel production of a "peace letter," in which Green alleged State Farm had unconditionally promised to pay any judgment rendered against Louder in this matter. On January 26, 1998, the first day of trial, the court reviewed the letter and held its contents were privileged work-product. Therefore, the court denied the motion to compel, but ordered that a copy of the letter be sealed and placed in the file.

¶ 8 During trial, Murray testified that the point of impact had been at the far right of her lane. However, Trooper Steven Helm, the officer who investigated the accident, testified that the skid marks for both vehicles commenced in the Louder lane. Accordingly, Helm estimated the point of impact was "somewhere close to the double yellow." In addition, Patty Ratliff, who was driving directly behind Louder at the time of the accident, testified Murray's vehicle was in Louder's lane when the accident occurred.

¶ 9 Regarding speed, Louder testified he was traveling between 35 and 40 miles per hour prior to the accident. Robert Wily, who was driving two vehicles behind Louder at the time of the accident, also testified that prior to the accident Louder had been traveling "somewhere around 35 to 40 miles an hour." Murray testified she was traveling 20 miles per hour prior to the accident. Although Green's expert, Ronald Probert, also

testified Murray was traveling around 20 miles per hour prior to the accident, during his cross-examination the jury learned Probert had previously opined that the "[s]peed on the Murray vehicle was about 35 miles per hour" at impact. In addition, Greg Duvall, Louder's expert, testified "the Murray truck was traveling approximately 38 miles per hour at the moment of impact."

¶ 10 As to the cause of the accident, Louder and his spouse both testified that at the scene of the accident Murray was crying and saying "it is all my fault." The experts for both parties testified the accident occurred because Murray and Louder, trying to avoid an accident, steered toward the same lane. Probert opined "that the Murray vehicle was left of center. Mr. Louder was coming towards Provo in the opposing lane of traffic and swerved to his left when he observed the Murray vehicle in his lane of travel." Duvall testified, "the fact that they both steered to the same direction is why they had an accident."

¶ 11 On January 30, 1998, the last day of trial, the court submitted the following questions to the jury by special verdict:

1. Considering all of the evidence in this case, do you find from a preponderance of the evidence that the defendant, Lloyd Louder, was negligent as alleged by the plaintiff?

2. Considering all of the evidence in this case, do you find from a preponderance of the evidence that the negligence of the defendant, Lloyd Louder, was a proximate cause of the plaintiff's injuries?

The jury answered "no" to both questions. Accordingly, the court entered a judgment dismissing Green's action against Louder. Green moved for a new trial raising the same issues she raises on appeal. After hearing oral argument, the court denied her request.

¶ 12 On appeal, Green argues: (1) instruction number 35, which stated that the happening of the accident did not create a presumption of negligence, was an improper "unavoidable accident" instruction; (2) de-

and the percentage or apportionment of fault attributable to each person seeking recovery, to each defendant, and to any person immune from

suit who contributed to the alleged injury." Utah Code Ann. § 78–27–39 (1994).

fendant's surrebuttal testimony was improper because it presented additional evidence and reemphasized matters already addressed by defendant in his case in chief; (3) the credibility of plaintiff's expert was improperly weakened by the exclusion of testimony about Winslam, a computer software program; (4) the testimony of defendant's expert was prejudicially bolstered by his assertion that the testimony of plaintiff's own expert confirmed his speed calculations; (5) the testimony of Officer Helm on the issue of fault was improperly admitted; (6) the "golden rule" arguments made by defense counsel during closing arguments were so improper as to require a new trial; (7) the denial of the production of the "peace letter" from State Farm to defendant was error; (8) the denial of plaintiff's motion to join State Farm was error because State Farm is the real party in interest; and (9) the cumulative effect of these errors denied her a fair trial.

### STANDARD OF REVIEW

■ ¶ 13 A district court has broad discretion in deciding whether to grant or deny a motion for a new trial. *Child v. Gonda,* 972 P.2d 425, 428 (Utah 1998). Because Green raises numerous issues involving different standards of review, we set forth the proper standard as we address each issue.

### ANALYSIS

#### I. JURY INSTRUCTION NO. 35

■ ¶ 14 Green argues it was reversible error to instruct the jury that the occurrence of the accident itself did not support the conclusion that someone had negligently caused the accident. Because jury instructions are statements of the law, "we review challenges to jury instructions under a 'cor-

---

**3.** This instruction is the same as instruction 3.3 of the Model Utah Jury Instructions.

**4.** In footnote three, the court of appeals explained that it did not consider instruction 9 to be an improper unavoidable accident instruction because "unlike the unavoidable accident instruction that tends to mislead the jury[,] ... this instruction taken from Model Utah Jury Instruction 3.3, raises no inference in favor of a verdict

---

rectness' standard." *See Child v. Gonda,* 972 P.2d 425, 429 (Utah 1998) (citing *Steffensen v. Smith's Mgt. Corp.,* 862 P.2d 1342, 1346 (Utah 1993)). Therefore, "we will not reverse a jury verdict where there is sufficient evidence in the record to support the jury's verdict on legally sound grounds...." *Cheves v. Williams,* 1999 UT 86, ¶ 20, 993 P.2d 191.

■ ¶ 15 Green questions instruction 35 which reads:

> The mere fact that an accident or injury occurred does not support a conclusion that the defendant or any other party was at fault or was negligent.[3]

Green argues instruction 35 was an improper "unavoidable accident" instruction like the one rejected in *Randle v. Allen,* 862 P.2d 1329, 1334 (Utah 1993). To support his position that instruction 35 was not an unavoidable accident instruction, Louder relies on language taken from a footnote[4] in *Anderson v. Sharp,* 899 P.2d 1245, 1249 (Utah Ct.App. 1995).

¶ 16 In *Randle,* this court disapproved of the following instruction:

> In the law we recognize what we term as unavoidable or inevitable accidents. These terms do not mean literally that it was not possible for such an accident to be avoided. They simply denote an accident that occurred without having been proximately caused by negligence. Even if such an accident could have been avoided by the exercise of exceptional foresight, skill or caution, still no one may be held liable for injuries resulting from it.

*Randle,* 862 P.2d at 1334. We agree with Green that the language of instruction 35 is substantially similar (although not identical) to the language of the instruction disapproved of by this court in *Randle.* In addition, as was the case in *Randle,* the instruction was given despite there being "evidence

---

for either party." It also commented that "[o]ther parts of the instruction make clear that the plaintiff has the burden in proving defendant's negligence," and pointed out that no objection to the instruction had been made at trial and therefore the issue was not preserved for appeal. The court's observations, therefore, appear to have been dicta. *Anderson v. Sharp,* 899 P.2d 1245, 1249 n. 3 (Utah Ct.App.1995).

[that] clearly establishes that one or more parties might be at fault." *Id.* at 1336.

¶ 17 Here Green properly objected to instruction 35 at trial. In addition, Green acknowledged during closing argument that Murray was partially at fault in causing the accident. Therefore, there was undisputed evidence that negligence caused this accident. Because instruction 35 was inconsistent with the evidence presented at trial, it was error for the trial court to give it. However, we are not convinced that without this instruction the jury would have reached a different result. There was extensive evidence in the record to support the jury's verdict, and it was properly instructed on negligence and causation; therefore, although erroneous, instruction 35 was harmless.

¶ 18 Notwithstanding the foregoing conclusion regarding harmlessness, we explicitly direct trial courts to abandon the use of this instruction hereafter. As we said in *Randle:*

> Accidents do occur which might be unavoidable or for which the defendant or defendants are not negligent. In such cases, if the state of the evidence warrants it, the trial judge should direct a verdict, or the jury, *applying proper instruction the elements of negligence and burden of proof,* should find no liability.

*Id.* at 1336 (emphasis added). The emphasized language from *Randle* does not permit the use of the language in instruction 35; in addition to being unnecessary, it suffers from the same defects (although to a milder degree) as the unavoidable accident language condemned in *Randle.* As the court of appeals noted in *Anderson,* "*Randle* does not preclude a defendant from presenting to the jury the theory that an accident was unavoidable; instead, it prohibits the court from instructing the jury on unavoidability...." *Anderson,* 899 P.2d at 1249.

## II. SURREBUTTAL TESTIMONY ON SPEED

¶ 19 Green argues the court erred in allowing Louder to present surrebuttal testimony in regard to speed. We review challenges to the admission of rebuttal testimony for abuse of discretion. *Turner v. Nelson,* 872 P.2d 1021, 1023 (Utah 1994) (citing rule 103 of the Utah Rules of Evidence).

¶ 20 At trial Murray testified she was traveling approximately 20 miles per hour just before the accident. Later in the proceeding, Duvall, Louder's expert, estimated Murray was traveling approximately 38 miles per hour, and Louder 18.8 miles per hour, at the point of impact.

¶ 21 To rebut this testimony, Green called David Engebretsen. Because Engebretsen had not been disclosed as a potential witness prior to trial, Louder moved to preclude his testimony. The motion was denied and Engebretsen testified that Duval had failed to subtract the momentum of the boat from the momentum of Louder's truck and trailer in his speed estimation, and that this was significant because it would "bring the impact speeds much closer together."

¶ 22 Louder then called Newel Knight, who had been designated as a surrebuttal witness. Knight was asked to explain the significance of the weight of the boat in the reconstruction of the accident. Knight testified the weight of the boat was used "as a number to plug into a formula to determine the possible reaction time of these drivers." According to his testimony, the weight of the boat was only used to validate the estimated speed of the vehicles and change the perception reaction times of the drivers. He also testified that "[i]f we were to run the numbers and take the boat in or out it might change the speed slightly[,] but we are dealing with one and a half seconds difference of time. That is why it doesn't matter what that [estimated] speed is." Green argues that Knight's testimony was not proper rebuttal testimony because it corroborated, reiterated, or repeated the defendant's case in chief.

¶ 23 This court has defined surrebuttal evidence as "evidence tending to refute, modify, explain, or otherwise minimize or nullify the effect of the opponent's evidence." *Randle v. Allen,* 862 P.2d 1329, 1338 (Utah 1993) (citing *Bd. of Educ. v. Barton,* 617 P.2d 347, 349 (Utah 1980)). Generally, "testimony presented for the purpose of re-

buttal should be admitted, even if the rebuttal is somewhat repetitive of testimony on issues addressed during the case-in-chief." *Id.* (citing *Workman v. Henrie*, 71 Utah 400, 407, 266 P. 1033, 1036 (1928)). Here Knight's testimony was offered to explain and minimize the effect of Engebretsen's testimony that the weight of the boat was an important factor in the reconstruction of the accident. The testimony was not offered to rehash or repeat Engebretsen's testimony. Even if somewhat repetitive, it was proper surrebuttal testimony.

## III. EXCLUSION OF PROBERT'S TESTIMONY REGARDING COMPUTER ANALYSIS

¶ 24 Green argues the trial court erred by excluding Probert's expert testimony about the results of computations performed by an accident reconstruction computer program called Winslam.[5] The "[q]ualification of a person as an expert witness ... is in the discretion of the trial court." *Patey v. Lainhart*, 1999 UT 31, ¶ 15, 977 P.2d 1193.

¶ 25 At trial, Green's expert, Probert, testified that he generally used various analytical tools to assist him in reconstructing an accident, including computer programs. Regarding his use of Winslam he said, "the last thing I do is evaluate that with various mathematical formulas through a computer program, or several, which I utilize in my business." When Probert was asked for an estimate of the impact speed of the vehicles, Louder objected, alleging that Probert based his opinion on the analysis performed by Winslam, but that he had failed to lay a proper foundation to establish the validity of the computer program under *State v. Rimmasch*, 775 P.2d 388 (Utah 1989). The court sustained the objection and allowed Green to question Probert on voir dire regarding his use of Winslam.

¶ 26 During voir dire, Probert testified he was unfamiliar with the principles and mathematical equations used by Winslam to estimate speed. However, Probert explained this was not problematic because he had reached his conclusions about speed independently from the use of Winslam in this case. In addition, he testified that his use of Winslam was limited to checking the accuracy of his findings, not for finding exact answers. In fact, Probert testified that computer programs are universally used by accident reconstructionists as a means to corroborate the accuracy of their findings. Ultimately, the trial court struck any testimony about Winslam's results. However, Probert was allowed to offer his independent opinion regarding impact speed. He testified that "the impact speeds on these two vehicles, each, [were] between 15 and 20 miles per hour for both vehicles."

¶ 27 We agree with Green that exclusion of the results of Winslam's analysis was erroneous and that Louder's interpretation of *Rimmasch* is mistaken. In *Rimmasch*, we held that where expert testimony is based upon novel scientific principles or techniques, trial courts should apply the inherent reliability test. *Rimmasch*, 775 P.2d at 396–97 (citing *Phillips v. Jackson*, 615 P.2d 1228, 1234 (Utah 1980)). Although Louder claims Winslam is a "magical black box," the use of computer software to perform complex mathematical calculations is certainly not based on novel scientific principles or techniques.[6]

¶ 28 Therefore, the appropriate standard for the admission of this testimony was set forth in *State v. Clayton*, 646 P.2d 723 (Utah 1982). In *Clayton* we explained that [o]nce the expert is qualified by the court, the witness may base his opinion on reports, writings or observations not in evidence which were made or compiled by others, so long as they are of a type rea-

---

5. According to Probert's testimony, accident reconstructionists "input" variables, such as weight of the vehicles, angles of impact, and amount of damage, and Winslam (using mathematical formulas) calculates results such as the speeds of the vehicles at impact.

6. It is certainly conceivable that some computer software programs might contain extremely novel elements that would require an inherent reliability determination, and we do not foreclose that possibility. In this case, however, Probert's testimony established that the type of calculation performed by Winslam was standard in his field.

sonably relied upon by experts in that particular field. The opposing party may challenge the suitability or reliability of such materials on cross-examination, but such challenge goes to the weight to be given the testimony, *not to its admissibility.*

*Id.* at 726 (emphasis added). The proper inquiry is whether accident reconstructionists reasonably and regularly rely on computer software programs, such as Winslam, to verify the accuracy of their findings.

¶ 29 Here the court heard evidence that computer programs are generally used in the field of accident reconstruction. Louder did not object or dispute this evidence; therefore, the *Clayton* standard was met. In addition, we have held that once an expert renders an opinion "[he] must be allowed to explain the foundation for that opinion." *State v. Kelley*, 2000 UT 41, ¶ 18, 1 P.3d 546 (citing *Patey v. Lainhart*, 1999 UT 31, ¶ 33, 977 P.2d 1193). Although ultimately Probert was allowed to testify regarding speed, he was not allowed to fully explain the basis of his opinion. Therefore, the trial court erred by excluding the computer-confirmed testimony. However, we are not convinced that excluding this testimony affected the jury's verdict. Speed was apparently one factor in the causation of this collision, but by no means a determinative one. That being the case, we conclude the error was harmless.

## IV. BOLSTERING OF TESTIMONY

¶ 30 Green argues error occurred when Louder's expert was permitted to testify that Green's own expert agreed with his calculations. We have held that trial courts have discretion in determining "whether specific testimony offered by an expert should be allowed...." *Randle*, 862 P.2d at 1337.

¶ 31 At trial, Duvall, Louder's expert, testified that at the moment of impact Louder was traveling 18.8 miles per hour and Murray was traveling 38 miles per hour. When defense counsel asked if he had "review[ed] any information which confirmed [his] estimates as to speed," Duvall answered "[w]ell I did. Even the plaintiff's expert reviewed my calculations and mentioned in his...."[7] Before Duvall could finish his statement, Green's counsel objected on the ground that it is inappropriate for an expert "to bolster [his] own testimony by an outside expert's conclusion."

¶ 32 The trial court heard arguments regarding this issue the following morning. Green's counsel argued that under rule 32 of the Utah Rules of Civil Procedure,[8] the deposition of a witness may be used for impeachment purposes, but not to bolster the testimony of the opposing party's expert. In response, Louder's counsel argued that by its express language rule 32 is subject to rule 703[9] of the Utah Rules of Evidence, which allows an expert, once foundation has been laid and his opinion has been given, to be questioned regarding the basis of those opinions. The court then ruled as follows:

[U]nder 703[and] 704 reference can be made to a deposition by an expert witness. The intent of 703 and 704 is to allow an expert witness to explain the basis of his

---

7. At trial, Probert, Green's expert, testified the impact speeds on both vehicles was between 15 and 20 miles per hour. However, during his cross-examination, Probert admitted during his deposition he had testified as follows: "I went through all of Greg Duvall's calculation[s]. I don't disagree with any of them."

8. Rule 32 of the Utah Rules of Civil Procedure provides in relevant part:

(a) Use of depositions: At the trial ... any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposi-

tion or who had reasonable notice thereof, in accordance with any of the following provisions: (1) Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of [a] deponent as a witness or for any other purpose permitted by the Utah Rules of Evidence.

9. Rule 703 of the Utah Rules of Evidence reads: [t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

opinion on matters that are usually inadmissible .... [u]nder 704 he is allowed to ... render his opinion on the ultimate issue ... [but] he cannot use what he used as a reference to bolster [his ultimate opinion] because that goes to the truth of the matter asserted.

When Duvall was recalled as a witness, he was asked again, "[w]hat evidence did you find that confirmed your time/distance analysis?" The court overruled Green's objection and Duvall responded, "Mr. Probert's deposition."

¶ 33 Green argues that this testimony violates the holding in *State v. Rimmasch*, 775 P.2d 388, 392 (Utah 1989), which precludes a witness from being an oath-helper; in other words, from testifying as to the truthfulness of another witness's testimony. In *Rimmasch* we held that "rule 608(a)(1) bars admission of an expert's testimony as to the truthfulness of a witness on a particular occasion." *Id.* In that case we concluded the expert's testimony, setting forth the reasons why she thought the daughter was telling the truth, "elicited a direct opinion on the daughter's truthfulness at the time she made her allegations of abuse." *Id.* at 393. That holding has no application here. Duvall testified that Probert's opinion in his deposition confirmed or corroborated his own conclusions. However, the contents of the deposition were not used; no inquiry was made regarding the veracity of Probert's deposition testimony. Veracity (as opposed to accuracy) was not at

issue, nor was this a case of "oath-helping." The admission of Duvall's testimony was not an abuse of discretion.

## V. TESTIMONY OF OFFICER HELM

¶ 34 Green argues that the admission of Officer Helm's testimony regarding fault,[10] the ultimate issue in this case, was plain error because it was based solely on inadmissible hearsay.[11] Although Green objected to Helm's reliance on hearsay evidence, she did not specifically object to his testimony regarding fault. Nevertheless, she asks this court to presume an objection to the testimony regarding fault based on her objection to the hearsay testimony. However, Green provides no legal argument or authority to support this contention. This court will not assume her " 'burden of argument and research.' " *State v. Thomas*, 961 P.2d 299, 305 (Utah 1998) (quoting *State v. Bishop*, 753 P.2d 439, 450 (Utah 1988)), and will not consider this argument.[12]

## VI. GOLDEN RULE ARGUMENTS

¶ 35 Green alleges the trial court erred by allowing defense counsel to make prejudicial "golden rule" arguments during closing argument.[13] The determination of whether remarks made during closing argument improperly influenced the verdict is within the sound discretion of the trial court. *State v. Valdez*, 30 Utah 2d 54, 513 P.2d 422,

---

10. Green questions the following testimony:

   A. [O]n vehicle No. 1, which was the Murray vehicle, [I put] drove left of center.
   Q. And for vehicle No. 2, which was the Louder vehicle?
   A. I put did not contribute.

11. Green contends Helm's conclusion regarding fault was based on his out-of-court conversations with Louder and Murray on the day of the accident. Helm testified that on the day of the accident he spoke to the parties in the hospital. According to Helm's testimony, Louder told him the accident occurred when another vehicle was in his lane of traffic and he swerved to the left to avoid an accident, and Murray told him she was in the wrong lane and was swerving back to her lane when she struck the other vehicle.

12. Nevertheless, we note that because Louder and Murray are parties to this case, their state-

ments to Helm on the day of the accident constitute admissions under Rule 801(d)(2) of the Utah Rules of Evidence. With respect to the testimony regarding fault, "testimony in the form of an opinion or inference otherwise admissible is not objectionable [just] because it embraces an ultimate issue to be decided by the trier of fact." Utah R. of Evid. 704(a). In fact, "[t]he jury is entitled to consider ... opinion evidence, even though it may have embraced the ultimate factual issue to be decided by the jury[,] for whatever weight it felt [the evidence] deserved." *Patey v. Lainhart*, 1999 UT 31, ¶ 28, 977 P.2d 1193 (citing *Shurtleff v. Jay Tuft & Co.*, 622 P.2d 1168, 1173 (Utah 1980)).

13. A golden rule argument is defined as a "jury argument in which a lawyer asks the jurors to reach a verdict by imagining themselves or someone they care about in the place of the injured plaintiff or crime victim." Black's Law Dictionary 700 (7th ed.1999).

426 (1973). Therefore, when improper closing arguments are given, reversal is only warranted if this court concludes that absent the improper argument, there was a reasonable likelihood of a more favorable outcome for the plaintiff. *State v. Dibello*, 780 P.2d 1221, 1225 (Utah 1989).

¶ 36 Green specifically considers the following closing statements improper:

> Look how close those cars are to having a head on collision and then ask yourself if you would do the same thing.

> Before you impose standards on Lloyd Louder higher than you pose [sic] on yourself, you must realize that he is only held to be the reasonable person, not the perfect person.

> How many of you, the standard of the reasonable person, would stay that close to a head on collision with a car coming in your own lane without trying to get somewhere else.

> [A] verdict that Louder was even partially at fault for this accident is to say in your heart, well I have never been seconds from an imminent head on collision. . . .

As acknowledged by Green in her brief to this court, the use of golden rule arguments is improper only "with respect to damages." *Shultz v. Rice*, 809 F.2d 643, 651–52 (10th Cir.1986) (citing *Burrage v. Harrell*, 537 F.2d 837, 839 (5th Cir.1976)). The statements cited above were not directed to the issue of damages. In addition, the use of golden rule arguments " 'is not improper when urged on the issue of ultimate liability.' " *Id.* at 652 (citing *Stokes v. Delcambre*, 710 F.2d 1120, 1128 (5th Cir.1983)). Therefore, the statements were not improper.

## VII. PEACE LETTER

¶ 37 Green argues the trial court erred in wrongfully denying the production of a letter from State Farm to Louder regarding this case. Because trial courts have broad discretion in matters of discovery, this issue is reviewed for abuse of discretion. *Askew v. Hardman*, 918 P.2d 469, 472 (Utah

1996). Consequently, "[a]n appellate court will not find abuse of discretion absent an erroneous conclusion of law or where there is no evidentiary basis for the trial court's ruling." *Id.*

¶ 38 Two weeks before trial, Green filed a motion to compel the production of a letter [14] from State Farm to Louder in which State Farm allegedly promised to pay any damages assessed personally against Louder in this matter. Green argued that because State Farm had prepared the letter it was not covered by the attorney-client privilege. In response, Louder argued that documents prepared in anticipation of litigation by an insurer are protected by the work-product privilege under *Askew v. Hardman*, 918 P.2d 469 (Utah 1996). On the first day of trial, the court heard arguments, reviewed a copy of the letter, and denied Green's request, finding that the letter was covered by the work-product privilege.

¶ 39 The applicable law governing discovery of documents is set forth in rule 26(b)(3) of the Utah Rules of Civil Procedure. It states:

> [A] party may obtain discovery of documents and tangible things otherwise *discoverable* under Subdivision (b)(1) of this rule and *prepared in anticipation of litigation* or for trial by or for another party or by or for that other party's representative (including the party's attorney, consultant, surety, indemnitor, *insurer*, or agent) *only* upon a showing that the party seeking discovery has *substantial need* of the materials in the preparation of the case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

(emphasis added). In *Askew*, we held that "rule [26] acknowledges that materials prepared by a party's insurance company ("insurer") are protected from discovery if they are prepared in anticipation of litigation." 918 P.2d at 473. Contrary to Green's argument, rule 26(b)(3) of the Utah Rules of Civil Procedure "does not require that the materials be prepared by an attorney to qualify for

---

14. According to Green's counsel's affidavit, Green learned of the existence of this "peace letter" in December 1997 during a conversation "regarding *settlement* matters in this case." (emphasis added).

such protection." *Id.* Because State Farm clearly qualifies as an insurer under the rule, the protection under the work-product privilege is triggered and the trial court did not err by denying Green access to the letter.

## VIII. STATE FARM AS THE REAL PARTY IN INTEREST

¶ 40 Green argues that the trial court erred in denying her motion to join State Farm as the real party in interest. A trial court's determination of whether a party should be joined to an action will not be disturbed absent an abuse of discretion. *Seftel v. Capital City Bank,* 767 P.2d 941, 944 (Utah Ct.App.1989), *aff'd, Landes v. Capital City Bank,* 795 P.2d 1127, 1129 (Utah 1990).

¶ 41 In her motion, which was filed approximately two weeks prior to trial,[15] Green argued that State Farm should be joined as a defendant under rules 17(a), 19(a), and 20(a) of the Utah Rules of Civil Procedure. Specifically, Green contended State Farm was the real party in interest because it provided her under-insured motorist coverage and had agreed to satisfy any judgment entered against Louder in this matter. In response, Louder argued Green's motion was untimely and without merit-based on this court's ruling in *Young v. Barney,* 20 Utah 2d 108, 433 P.2d 846 (1967) (holding that the joinder provisions of rules 18(b) and 20 of the Utah Rules of Civil Procedure do not allow the plaintiff to join the defendant's insurance company as a party defendant in a negligence action).

¶ 42 Approximately a week prior to trial, the court denied Green's request. The following is a relevant excerpt from the trial court's ruling:

[T]he Supreme Court has consistently held that an insurance company cannot be joined as a party defendant with a tort feasor. *Young v. Barney,* 20 Utah 2d 108, 433 P.2d 846 (1967).... In addition, Plaintiff's motion is not timely. In *Westley v. Farmer's Insurance Exchange* and *Kelly v. Utah Power & Light,* both plaintiff's motions to amend were denied because

they would have delayed trial. 663 P.2d 93 (Utah 1983), 746 P.2d 1189 (Utah Ct.App. 1987). Plaintiff filed this motion ... seventeen days prior to the beginning of trial. Granting this motion would certainly delay the trial as the newly named defendant would have to be given the appropriate time to answer, conduct discovery, argue substantive motion, and prepare for trial.

¶ 43 Rule 17(a) of the Utah Rules of Civil Procedure provides in pertinent part, "[e]very action shall be prosecuted in the name of the real party in interest...." The purpose of this rule is to allow *defendants* the right to have a cause of action prosecuted by the real party in interest in order for the judgment to preclude any action on the same demand by another. *Shaw v. Jeppson,* 121 Utah 155, 239 P.2d 745, 748 (1952). Green concedes that "the language of the rule ... literally applies to only plaintiffs," but also contends "the same policy applies to defendants ... the rule does not prohibit a plaintiff from suing the real party in interest." However, Green fails to provide any legal authority to support this argument, so we decline to address it. *State v. Thomas,* 961 P.2d 299, 305 (Utah 1998) (quoting *State v. Bishop,* 753 P.2d 439, 450 (Utah 1988)).

¶ 44 Turning to rule 19(a) of the Utah Rules of Civil Procedure, we address the following language:

[A] person ... shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

The purpose of this rule is to guard against the entry of judgments which might "prejudice *the rights of such parties* in their ab-

---

**15.** Green originally filed her motion to join State Farm on November 19, 1996. However, Green orally withdrew that motion in February of 1997.

sence." *Sanpete County Water Conservancy Dist. v. Price River Water Users Ass'n*, 652 P.2d 1302, 1306 (Utah 1982) (emphasis added). With respect to subsection one, we have defined a necessary party as "one whose presence is required for a full and fair determination of his rights, as well as of the rights of other parties to the suit." *Cowen & Co. v. Atlas Stock Transf. Co.*, 695 P.2d 109, 114 (Utah 1984) (citing *Johnson v. Utah State Ret. Office*, 621 P.2d 1234, 1236 (1980)). Green argues "[r]ules 17 and 19, together with [r]ule 20, clearly make State Farm a necessary, indispensable, or at least permissible, party to be joined in the action as a real party in interest." The only legal authority she cites to support this argument is a quote from a law review article that states "the provision of the policy giving an insurance company full control of the investigation, settlement and litigation of a claim makes the company a real party at interest." Leon Green, *Blindfolding the Jury*, 33 Tex. L.Rev. 157, [158] (1954). But she fails to address how State Farm, based on the criteria set forth in rule 19(a), was a necessary party to this action. As stated before, we will not assume her " 'burden of argument and research.' " *State v. Thomas*, 961 P.2d 299, 305 (Utah 1998) (quoting *State v. Bishop*, 753 P.2d 439, 450 (Utah 1988)).

¶ 45 Finally under rule 20 of the Utah Rules of Civil Procedure,

> [a]ll persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. . . .

Green acknowledges in her brief that in *Young v. Barney*, 20 Utah 2d 108, 112, 433 P.2d 846, 848 (1967), we held that a plaintiff may not join the defendant's insurance company as a party defendant in a negligence cause of action under the joinder provisions of rules 18(b) and 20 of the Utah Rules of Civil Procedure. We see no policy reason, nor does Green provide any legal argument, for departing from our holding in *Young*.

Therefore, the trial court properly relied on the principles set forth in *Young* in denying Green's request to join State Farm in this action.

## IX.   CUMULATIVE ERROR

¶ 46 Green argues that the cumulative effect of the trial court's errors denied her a fair trial. We have agreed with only two of her claims and those errors were individually harmless. There is no basis for deeming them prejudicial in any cumulative way. *See Whitehead v. Am. Motors Sales Corp.*, 801 P.2d 920, 928 (Utah 1990).

## CONCLUSION

¶ 47 Because there was ample evidence in the record to support the jury's verdict, and because we are not persuaded that the trial was in any way prejudicial to the plaintiff, we affirm.

¶ 48 Associate Chief Justice RUSSON, Justice DURRANT and Justice WILKINS concur in Justice DURHAM's opinion.

¶ 49 Chief Justice HOWE concurs in the result.