1999 UT 31

**Michelle A. PATEY, Plaintiff and Appellee,**

v.

**Kurt N. LAINHART, Defendant and Appellant.**

**No. 970229.**

Supreme Court of Utah.

April 6, 1999.

**1194**

Scott D. Brown, Salt Lake City, for Patey.

John M. Chipman, Linda L. Roth, Salt Lake City, for Lainhart.

STEWART, Justice:

¶ 1 Defendant Kurt Lainhart appeals from a jury verdict awarding plaintiff Michelle Patey damages for injuries she received in an automobile accident Lainhart caused. Lainhart argues that the trial court impermissibly allowed Patey's dentist, Dr. Leland Bitner, to testify that the car accident was caused injuries to her teeth and to relate the opinions of other dentists to whom he had referred Patey. Lainhart also asserts that Bitner was not qualified to give an opinion about the causation of Patey's injuries and that the basis for his opinion lacked inherent reliability under the doctrine announced in *State v. Rimmasch,* 775 P.2d 388 (Utah 1989).

¶ 2 On appeal from a jury verdict, we relate the facts in the light most favorable to that verdict. *See Rees v. Intermountain Health Care, Inc.,* 808 P.2d 1069, 1073 (Utah 1991). We "present conflicting evidence only to the extent necessary to understand the issues raised on appeal." *State v. Dunn,* 850 P.2d 1201, 1206 (Utah 1993).

### I. BACKGROUND

¶ 3 In 1991, Patey was driving on a residential portion of 11th East in Salt Lake City

with one lane of traffic in each direction. She slowed and began to turn left into the driveway of her home when Lainhart, who was following two cars behind her, attempted to pass on the left. Lainhart struck the rear of the driver's side of Patey's car as she was turning. The force of the collision spun the passenger side of her car laterally into the curb. Patey suffered bruising on the left side of her face and a lump near the top of her head. Lainhart admitted he had been traveling at 30 to 35 miles per hour when he attempted to pass, and a witness estimated Lainhart's speed at 35 miles per hour. A police officer testified that there were "yaw" marks from Patey's tires as her car spun laterally into the gutter but that there were no skid marks from Lainhart's vehicle.

¶4 Although Patey did not initially perceive her injuries as being serious, she eventually experienced chronic back, neck, and dental problems. In particular, Patey asserted that evident trauma to her teeth arose some two years after the accident and eventually required root canals on all twenty-seven of her teeth. The only issue Lainhart has raised on appeal is the award for damages related to the dental problems.

¶5 Patey's principal witness at trial was Dr. Leland Bitner, who is Patey's uncle and had been her regular dentist for many years. He is a general dentist and routinely performs endodontic surgery.[1] He performed the dental work for which Patey claimed damages. Although Dr. Bitner does not specialize in or limit his practice to endodontics, the trial court found that Dr. Bitner was qualified to testify concerning endodontic procedures.

¶6 During the course of treating Patey, Dr. Bitner consulted three other dental specialists: Dr. Bruce Kochevar, an endodontist who also testified at trial, Dr. James Guinn, a dentist who specializes in facial pain and jaw disorders, and Dr. L. Douglas Israelsen, an oral surgeon. Neither Dr. Guinn nor Dr. Israelsen testified at trial, but Dr. Bitner referred to their opinions while presenting his own testimony.

¶7 Dr. Bitner testified that he believed severe trauma to Patey's teeth was the only possible cause of so many damaged teeth requiring root canals. He stated that a direct blow to the teeth or a blow to the head or jaw causing teeth to strike each other violently can crack the affected teeth, damage the roots, and eventually cause necrosis or death of the teeth. However, such necrosis, requiring root canal or other treatment, may become evident only months or years later.

¶8 Dr. Bitner testified to his conclusion that Patey's 1991 car accident was the only incident in her history that could have caused sufficient trauma to all twenty-seven of her teeth such that they all required root canals. He related the procedures he had employed to determine that her teeth needed root canals, and presented photographs of her teeth that showed extensive minute cracks in them. He testified the cracking was unusual and not the sort of damage that would result from ordinary chewing or grinding of the teeth.

¶9 Dr. Bitner briefly referred at trial to the findings of Dr. Guinn and Dr. Israelsen, neither of whom testified. Dr. Bitner stated he had consulted them in the normal and ordinary course of his treatment to confirm his diagnosis of Patey's dental injuries. Dr. Bitner testified that Dr. Guinn found Patey had suffered small fractures in her jaw, since healed over, caused by some traumatic incident. Dr. Bitner testified that Dr. Guinn believed Patey's car accident was the cause of the damage to her teeth.

¶10 Dr. Kochevar, an endodontist, also testified for Patey at trial. Dr. Bitner referred Patey to Dr. Kochevar during the course of her treatment. Dr. Kochevar corroborated Dr. Bitner's testimony in all material respects. He agreed Patey had suffered some sort of trauma that had damaged her teeth, leading to the need for the extensive dental work Dr. Bitner had performed.

¶11 Lainhart presented two witnesses to rebut Dr. Bitner's testimony concerning Patey's dental problems. Dr. Jay B. Sorenson, an endodontist, testified that he believed much of Dr. Bitner's dental work had been unnecessary. He asserted that Dr. Bitner

---

1. Endodontics is the branch of dentistry dealing with diseases of the tooth pulp, the treatment of which primarily entails root canal surgery.

had not adequately charted his diagnosis to justify performing root canals on every tooth in Patey's mouth. Dr. Sorenson also stated that serious trauma to teeth is generally caused by direct blows to the teeth or to the jaw, rather than to the upper portion of the head such as what Patey experienced. He opined that a blow to the top or side of Patey's head sufficient to crack every tooth in her mouth would have crushed her skull.

¶ 12 Dr. Sorenson's testimony was supplemented by E. Paul France, who represented himself as a biomechanical engineer specializing in injury-accident reconstruction. France claimed that a computer reconstruction of the accident demonstrated Lainhart was traveling at only 20 miles per hour when he struck Patey's vehicle, and that Patey could not have hit her head hard enough to cause the damages that she claimed.

¶ 13 The jury found in favor of Patey and awarded her $200,000 in general damages for pain and suffering and $54,469 in past and future medical expenses.

¶ 14 On appeal, Lainhart contends that (1) Dr. Bitner was not qualified to give an opinion concerning the need for root canal treatments; (2) Dr. Bitner should not have testified as to the cause of Patey's injuries; and (3) it was improper for the court to allow Dr. Bitner to testify about the findings made by Dr. Guinn and Dr. Israelsen. We address each argument in turn.

## II. DR. BITNER'S EXPERT QUALIFICATIONS

 ¶ 15 Lainhart first attacks Dr. Bitner's qualifications to testify as an expert in endodontics. Utah Rule of Evidence states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

"Qualification of a person as an expert witness ... is in the discretion of the trial court." *State v. Espinoza*, 723 P.2d 420, 421 (Utah 1986); *see also Dixon v. Stewart*, 658 P.2d 591, 597 (Utah 1982). "The critical factor in determining the competency of an expert is whether that expert has knowledge that can assist the trier of fact in resolving the issues before it." *Wessel v. Erickson Landscaping Co.*, 711 P.2d 250, 253 (Utah 1985). A person may be qualified to testify as an expert by virtue of experience and training; formal education is not necessarily required. *See Randle v. Allen*, 862 P.2d 1329, 1337 (Utah 1993).

 ¶ 16 This Court addressed the question of what constitutes appropriate "scientific, technical, or other specialized knowledge" under Rule 702 in *State v. Rimmasch*, 775 P.2d 388 (Utah 1989). *Rimmasch* held that proffers of evidence based upon novel scientific theories were subject to "additional tests of admissibility," including that the novel technique be "inherently reliable." *Id.* at 396. Lainhart argues that Dr. Bitner's expert testimony was not "inherently reliable," and hence was inadmissible under *Rimmasch*. This argument is without merit. *Rimmasch*—and the "inherent reliability" standard it established—dealt with the admission of expert testimony "based upon novel scientific principles or techniques." 775 P.2d at 396. In this case, however, there has been no plausible claim that the type of expert testimony which was offered by both parties in the case was based upon novel scientific principles or techniques. The testimony offered by all of the dental experts about the need for endodontic work was not novel. Indeed, it was clearly of the sort that had "attained general acceptance in ... the relevant scientific community." *Rimmasch*, 775 P.2d at 396; *see also Phillips v. Jackson*, 615 P.2d 1228, 1234–35 (Utah 1980). Dr. Bitner's testimony did not even implicate *Rimmasch*, much less violate its requirements.

 ¶ 17 Lainhart also directly attacks Dr. Bitner's personal qualifications to testify as an expert. Lainhart asserts that Dr. Bitner cannot testify about endodontic treatments because he is not an endodontist. Dr. Bitner practices general dentistry, which has included the frequent performance of endodontic surgery. Dr. Bitner cannot hold himself out as an endodontist, Lainhart argues, because he does not limit his practice to endodontic treatments. Lainhart also asserts that Dr. Bitner's decision to consult specialists in the course of his diagnosis and treatment of Patey is an admission that he was unqualified in the area of endodontics.

¶ 18 The trial court did not abuse its discretion in allowing Dr. Bitner to testify about the nature and treatment of Patey's dental injuries. Clearly Dr. Bitner was highly qualified, from both formal training and actual practice, to give expert opinions in general dentistry and endodontics. Dr. Bitner testified that one-fourth of his dental education related to endodontics; that he was licensed by the state to perform endodontic procedures; that he had maintained an ongoing educational study of both general dentistry and endodontics by taking postgraduate courses, studying current professional publications, and attending 20 to 40 hours of professional seminars per year; and that endodontics constituted a substantial portion of his 36-year practice. Additionally, Dr. Bitner was Patey's dentist for most of her life and was the person most familiar with the course of treatment she had undergone. The knowledge he had obtained by virtue of his experience in practicing endodontics and by virtue of his familiarity with Patey's background was helpful in assisting the jury to understand the nature of her injuries. Lainhart's claim that Dr. Bitner was not qualified to give expert testimony in endodontics is unpersuasive. *See id.* at 253–54; *Burton v. Youngblood,* 711 P.2d 245 (Utah 1985).[2]

¶ 19 Furthermore, Dr. Bitner's consultation of other experts in the field of endodontics did not disqualify him from testifying on the subject himself. Simply because an expert, qualified under Rule 702, admits that he or she consults other experts or

admits that other specialists may be more qualified in some areas does not render that expert unqualified to testify in a matter.[3] The rules of evidence establish a minimum baseline for expert qualifications. They do not mandate that litigants call only the most highly qualified experts to testify. Dr. Bitner established that he was qualified "by knowledge, skill, experience, training, or education [to] testify" about Patey's dental diagnosis and treatment. Utah R. Evid. 702. Therefore, we hold that the trial court did not abuse its discretion by allowing Dr. Bitner to testify as to the diagnosis and treatments Patey received.

### III. DR. BITNER'S CAUSATION TESTIMONY

¶ 20 Lainhart's second contention is that Dr. Bitner should not have been permitted to testify about the precise cause of Patey's dental problems.[4] Causation is one of the critical elements of any negligence action. Patey had the burden of demonstrating by a preponderance of the evidence that her accident caused trauma to her teeth that eventually required the extensive dental treatment Dr. Bitner provided. Because Patey did not experience symptoms of trauma to her teeth until some two years after the accident, the causal link between that event and the injuries she suffered was logically more tenuous than the causes of medical injuries that are immediately apparent. Over Lainhart's objections, the trial court allowed Dr. Bitner to testify that the accident involving Lainhart and Patey was the cause of Patey's dental problems.

---

2. *Burton* noted the general rule that "ordinarily, a practitioner of one school of medicine is not competent to testify as an expert in a malpractice action against a practitioner of another school." 711 P.2d at 248. However, it also explained an exception to that rule: that "an expert witness belonging to one school may competently testify against a member of another school once sufficient foundation has been laid to show that the method of treatment—and hence the standard of care—is common to both schools." *Id. Wessel,* relying on *Burton,* held that a structural engineer could properly testify as an expert on a landscape architect's standard of care in building a retaining wall. *See* 711 P.2d at 253. The landscape architect laid a foundation for that testimony: he designed retaining walls in the ordinary course of his occupation, understood the requirements of the building code for retaining walls, and was thus familiar with the proper standard of care. *See id.* at 253–54; *see also Burton,* 711 P.2d at 248.

3. Indeed, a willingness to seek the perspectives of others and to admit one's own limitations should bolster rather than detract from an expert's credibility.

4. Lainhart applies his *Rimmasch* argument to this issue as well. Again, we find it to be without merit. As stated above, our decision in *Rimmasch* applies in cases in which proffers of evidence are based upon novel scientific principles or techniques. Both Patey and Lainhart presented testimony from dental specialists who all agreed that trauma to teeth from a severe blow to the head or jaw could lead to damage to the nerves or root of the tooth, which could then necessitate root canal treatment. The witnesses disagreed as to the conclusions to be drawn in this particular case, but none of them stated or even implied that anyone was relying on "novel scientific principles or techniques."

¶ 21 The field of expert medical testimony is "generally subject to the same limitations on scope and extent as are applicable to expert testimony in other fields of specialized knowledge." 31A Am.Jur.2d *Expert and Opinion Evidence* § 214 (1989). Although "[e]xpert opinion testimony should not be permitted to invade the field of common knowledge or the province of the jury," *id.,* an expert opinion is not inadmissible merely because it embraces an "ultimate fact in issue," such as the cause of an accident or injury. 32 C.J.S. *Evidence* § 513(a) (1996) (footnotes omitted); *see also* Utah R. Evid. 704(a) (1998); *Edwards v. Didericksen,* 597 P.2d 1328, 1329–30 (Utah 1979); *Hooper v. GMC,* 123 Utah 515, 260 P.2d 549, 552–53 (1953).

¶ 22 Consequently, an expert opinion about the cause of an injury is "admissible where the subject matter is not one of common observation or knowledge, or in other words, where witnesses because of particular knowledge are competent to reach an intelligent conclusion and inexperienced persons are likely to prove incapable of forming a correct judgment without skilled assistance." 31A Am.Jur.2d *Expert and Opinion Evidence* § 342 (1989); *see also Edwards,* 597 P.2d at 1330; *Hooper,* 260 P.2d at 552–53. Where

> a witness, by reason of his special skill or experience along certain lines, is able to estimate more correctly than it would be possible for the jury to do, the cause of an observed phenomenon, or the effect of a particular occurrence, ... in such circumstances the witness is permitted to state his inference or judgment.

32 C.J.S. *Evidence* § 611 (footnotes omitted).

¶ 23 Any such inference or judgment is nevertheless limited by the foundation laid for it. A declaration about causation is inadmissible "where an expert witness has not testified to sufficient facts on which to base his opinion." *Id.* "The expertise of the witness, his degree of familiarity with the necessary facts, and the logical nexus between his opinion and the facts adduced must be established." *Edwards,* 597 P.2d at 1331; *see also* 31A Am.Jur.2d *Expert and Opinion Evidence* § 246 ("An expert medical opinion as to the causal relation between an event and [injury] is inadmissible if it amounts to the expression of a pure conclusion, with no reference to factual causative antecedents....").

¶ 24 In this case, Dr. Bitner, over Lainhart's timely objection, definitively stated that Patey's 1991 automobile accident was the cause of her injuries. Dr. Bitner based his conclusion upon his general understanding of the types of blows that generally cause trauma to teeth. Dr. Bitner began treating Patey some two years after her accident, and sought an explanation for what could have damaged all the teeth in her mouth. Because certain facts connected with the 1991 accident fit his diagnostic model of tooth trauma, he concluded that the accident was the source of her injury and related that conclusion to the jury.

¶ 25 Dr. Bitner's causation testimony was proper. His experience and education qualified him to testify that in his expert opinion Patey's dental problems were caused by trauma to her teeth. He was familiar with the necessary foundational facts to establish the basis for his conclusion. His testimony describing the general types of blows to the head or teeth that could cause damage to the roots of teeth was within his experience as an expert diagnosing dental trauma. His understanding of the types of accidents that can produce tooth trauma and the reasons for long delays in the appearance of overt symptoms was helpful to the jury in evaluating the case. A person without training in endodontics would not be able to draw any conclusions about the types of blows to the head that can produce tooth trauma leading to the need for root canal treatments.

¶ 26 Consequently, it was proper for Dr. Bitner to testify to the fact that Patey's 1991 accident was the type of event that could have caused her dental injuries. That he stated his conclusion in definitive terms is not error. We held long ago that an expert may testify to " 'what did' cause," as well as to " 'what might' or 'what could' have caused," the damages claimed. *Hooper,* 260 P.2d at 552, *quoted in Edwards,* 597 P.2d at 1330; *see also* 31A Am.Jur.2d *Expert and Opinion Evidence* § 257. The expert's choice of terms should reflect " 'the degree of

positiveness the witness desires to give his opinion.' " *Id.*

¶ 27 Lainhart had ample opportunity to contest Dr. Bitner's word choice in expressing his conclusion. Indeed, Lainhart presented expert witnesses who directly attacked the basis of Dr. Bitner's opinions and raised the inference that other incidents might have been the actual cause of Patey's injuries. Dr. Sorenson, an endodontist who testified on Lainhart's behalf, directly contested Dr. Bitner's belief that a relatively minor blow to the top or side of the head could have caused such severe tooth trauma. Dr. Sorenson opined that any blow severe enough to crack every tooth in Patey's mouth would have also crushed her skull. Lainhart's other expert witness, Mr. France, concurred in this view. Dr. Sorenson claimed that Dr. Bitner may have performed many of the root canal procedures unnecessarily and that those treatments in conjunction with ordinary grinding of teeth may have been the source of at least some of the cracking in Patey's teeth. He also expressed doubt that there could have been such a long delay between Patey's 1991 accident and the appearance of overt symptoms of tooth trauma. Thus, Lainhart had ample opportunity to expose flaws or the speculation in Dr. Bitner's testimony.

¶ 28 In the end, it was the jury that decided the causation issue. As in another case, "[t]he jury was entitled to consider ... opinion evidence, even though it may have embraced the ultimate factual issue to be decided by the jury[,] for whatever weight it felt [the evidence] deserved." *Shurtleff v. Jay Tuft & Co.*, 622 P.2d 1168, 1173 (Utah 1980). The trial court did not err in allowing Dr. Bitner to give his opinion as to the cause of Patey's dental injuries.

## IV. DR. BITNER'S RELIANCE ON OTHER EXPERTS

¶ 29 Lainhart's final argument is that the trial court erred in allowing Dr. Bitner's recitation of the diagnoses of Dr. Guinn and Dr. Israelson, neither of whom testified at trial. Dr. Bitner referred to their diagnoses when he explained the basis for his own conclusions. He also noted that Dr. Guinn had expressed the opinion that the 1991 accident was the cause of Patey's dental injuries.

¶ 30 Utah Rule of Evidence 703 provides:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

The Advisory Committee Notes to Federal Rule 703, upon which the Utah rule is derived, elucidates:

Thus a physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety [much of which is hearsay], including statements by patients and relatives, *reports and opinions from nurses, technicians and other doctors*, hospital records, and X-rays. Most of them are admissible in evidence, but only with the expenditure of substantial time in producing and examining various authenticating witnesses.

Note of Advisory Committee on Rule 703 (emphasis added). Anticipating Utah's adoption of the Federal Rules of Evidence, this Court stated in *State v. Clayton,* 646 P.2d 723, 725 (Utah 1982):

The traditional rule has limited an expert's opinion testimony to personal experience and observation.... More recently, [Rule] 703 has broadened the basis for an expert's testimony by specifying that facts or data used in forming an opinion or inference need not be admissible if of the type reasonably relied on by experts in the witness' field of expertise.

*Clayton* held:

once the expert is qualified by the court, the witness may base his opinion on reports, writings or observations not in evidence which were made or compiled by others, so long as they are of a type reasonably relied upon by experts in that particular field. The opposing party may challenge the suitability or reliability of such materials on cross-examination, but such challenge goes to the weight to be

given the testimony, not to its admissibility.

*Id.* at 726; *see also* 4 *Weinstein's Federal Evidence* § 703.05[3] (1999).

¶ 31 Lainhart's argument here is also based upon *Rimmasch*'s "inherent reliability" standard. He argues that Dr. Bitner's recitation of other experts' diagnoses was not shown to be inherently reliable. Notably, Lainhart does *not* directly challenge the possible hearsay element of Dr. Bitner's testimony. As analyzed above, *Rimmasch*'s "inherent reliability" standard is not applicable to this case. We leave until another day the decision whether an expert, in laying the foundation for his own opinion, can recite the opinions of other experts with whom he consulted.

¶ 32 Lainhart also argues that Dr. Bitner's testimony should have been excluded because it essentially adopted, without independent analysis, Dr. Guinn's conclusion that the 1991 accident was the cause of Patey's injuries. The record does not support that argument. Dr. Bitner testified that he was a "very conservative" dentist and that consultations with other dentists were ordinary in his practice. The consultations here seem especially justified in light of the extent of Patey's dental injuries. There is no evidence, however, that Dr. Bitner ceded his judgment for that of the other dentists to whom he referred Patey. Dr. Bitner testified to *his* professional opinion on the cause of Patey's injuries. That opinion was based on, but not adopted from, consultation with other experts. Lainhart rebutted Dr. Bitner's testimony with other experts. The jury had to choose between Patey's claim that her injuries stemmed from her accident with Lainhart and Lainhart's claim that they did not. The jury chose Patey's claim, and Lainhart has offered no valid reason to overturn its decision.

¶ 33 Some of the information Dr. Bitner presented in his recitation of the diagnoses of Dr. Guinn and Dr. Israelson was hearsay. Nevertheless, under Rule 703, it was admissible so long as it was of the "type reasonably relied upon" by Dr. Bitner in his diagnosis of Patey's injuries. *See, e.g., Lewis v. Rego Co.*, 757 F.2d 66, 73–74 (3d Cir.1985). Much of what experts rely upon in formulating opinions is inadmissible evidence. However, experts are called into court to give their expert opinions, and they must be allowed to explain the foundation for that opinion. Rule 703 cannot be used to introduce evidence through an expert for purposes other than the expert's conclusions and thus circumvent other rules of evidence. *See, e.g., In re James Wilson Assocs.*, 965 F.2d 160, 172–73 (7th Cir.1992). However, experts may recite hearsay evidence in order to lay a foundation for the opinions they give to the jury. *See, e.g., United States v. Farley*, 992 F.2d 1122, 1125 (10th Cir.1993). Here, Dr. Bitner's testimony concerning his consultations with other experts established the foundation for his expert opinion. Dr. Bitner testified that he referred Patey to both Dr. Guinn and Dr. Israelson in the regular course of Patey's treatment and that he did so for the purpose of gaining their assistance in treating her unusual injuries. Lainhart failed to rebut Patey's evidence that the information Dr. Bitner received from the other dentists was of the type experts would commonly or reasonably rely upon to diagnose and treat injuries. Thus, the trial court did not abuse its discretion in allowing Dr. Bitner's recitation of information provided by other experts.

¶ 34 Affirmed.

¶ 35 Associate Chief Justice DURHAM, Justice ZIMMERMAN and Justice RUSSON concur in Justice STEWART's opinion.

¶ 36 Chief Justice HOWE concurs in the result.