2004 UT App 418

**STATE of Utah, Plaintiff and Appellee,**

v.

**Raymond Michael QUINTANA, Defendant and Appellant.**

No. 20030471–CA.

Court of Appeals of Utah.

Nov. 12, 2004.

David C. Biggs and Kent R. Hart, Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General, and Christopher D. Ballard, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges BENCH, DAVIS, and THORNE.

MEMORANDUM DECISION

BENCH, Associate Presiding Judge:

¶ 1 Raymond Michael Quintana appeals his convictions for burglary, *see* Utah Code Ann. § 76-6-202 (2003), and theft, *see* Utah Code Ann. § 76-6-404 (2003).

■ ¶ 2 Quintana first argues that fingerprint evidence is inherently unreliable and thus inadmissible under rule 702 of the Utah Rules of Evidence. We review a trial court's decision to admit expert evidence under an abuse of discretion standard. *See State v. Schultz*, 2002 UT App 366, ¶ 18, 58 P.3d 879.

■ ¶ 3 Rule 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Utah R. Evid. 702. Admissibility under rule 702 hinges on "whether ... 'the evidence will be helpful to the finder of fact.'" *State v. Larsen*, 865 P.2d 1355, 1361 (Utah 1993) (quoting *State v. Rimmasch*, 775 P.2d 388, 398 n. 8 (1989)).

■ ¶ 4 If an expert testifies regarding "novel scientific principles and techniques," then the court first applies the separate "threshold reliability test" of *State v. Rimmasch*, 775 P.2d 388 (Utah 1989). *Schultz*, 2002 UT App 366 at ¶ 21, 58 P.3d 879. However, if the expert testifies regarding scientific methods that have " 'attained general acceptance in ... the relevant scientific community,'" the additional *Rimmasch* test does not apply. *Id.* at ¶ 22 (alteration in original) (quoting *Patey v. Lainhart*, 1999 UT 31, ¶ 16, 977 P.2d 1193).

¶ 5 Quintana argues that lack of empirical research on fingerprint evidence requires us to apply the *Rimmasch* test. However, we conclude that fingerprint identification is not novel scientific evidence. *See, e.g., United States v. Crisp*, 324 F.3d 261, 266 (4th Cir.) ("Fingerprint identification has been admissi-

ble as reliable evidence in criminal trials in this country since at least 1911."), *cert. denied*, 540 U.S. 888, 124 S.Ct. 220, 157 L.Ed.2d 159 (2003); *United States v. Collins*, 340 F.3d 672, 682 (8th Cir.2003) ("Fingerprint evidence and analysis is generally accepted."); *United States v. Havvard*, 260 F.3d 597, 601 (7th Cir.2001) ("[F]ingerprinting techniques have been tested in the adversarial system....")

¶ 6 The case of *State v. Hamilton*, 827 P.2d 232 (Utah 1992), supports the notion that fingerprint evidence is not novel and raises no special evidentiary concerns. In *Hamilton*, the defendant argued that fingerprint evidence was insufficient to support his murder conviction because the prosecution presented no evidence establishing that the fingerprints were left at the time the crime was committed. *See id.* at 236. However, the Utah Supreme Court rejected this argument, holding that "we ... treat[ ] fingerprint evidence like any other evidence and [do not] evaluate[ ] its sufficiency to support a conviction by a separate, more stringent standard." *Id.* at 237. Thus, the supreme court clearly indicated that fingerprint evidence is not "subject to reliability problems" sufficient to justify special treatment. *Id.* In light of *Hamilton* and a longstanding reliance on fingerprint evidence, the trial court did not abuse its discretion when it admitted the fingerprint expert's testimony.[1]

■ ¶ 7 Quintana next argues that, even assuming the admissibility of the fingerprint identification, the State did not present sufficient evidence to support his conviction. Quintana's position is similar to that of the defendant in *Hamilton*. Quintana contends that where fingerprint identification is the only evidence supporting conviction, the State must offer additional evidence establishing that he left the prints at the time of the crime. *See id.* at 236. The Utah Supreme Court has already rejected this argument: "We treat[ ] fingerprint evidence like any other piece of evidence whether or not there is additional evidence." *Id.* at 237.

---

1. We also note that Quintana presented no evidence of irregularity in the identification in his case. The Salt Lake City Crime Laboratory requires that two fingerprints share a minimum of ten characteristics to support an identification. Here, the expert identified over fourteen matching characteristics.

The jury therefore could have properly concluded that the single fingerprint found on a laquer box in the victims' home belonged to Quintana and that the fingerprint was left at the time the home was burglarized. *See id.* at 236 (noting that on appeal, the court reviews the evidence in the light most favorable to the jury verdict).

¶ 8 Finally, Quintana contends that the trial court erred in failing to instruct the jury on the lesser included offense of criminal trespass. *See* Utah Code Ann. § 76–6–206 (2003). Quintana argues that because the State did not present evidence showing when the fingerprint was left, the jury could have concluded that he entered the home at a time prior to the burglary and touched the box with only the intent of committing criminal trespass. We review the trial court's determination of this issue for correctness. *See State v. Knight,* 2003 UT App 354, ¶ 8, 79 P.3d 969.

¶ 9 To demonstrate error, Quintana must show that the evidence at trial provided " 'a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.' " *State v. Baker,* 671 P.2d 152, 159 (Utah 1983) (quoting Utah Code section 76–1–402(4) (1973)). However, the evidence here presented no rational basis for a conviction on the lesser included offense. As Quintana has noted, he "has never admitted entering the [victims'] home at the time of the burglary." Indeed, he has never admitted to entering the home at any time. In order for the jury to rationally convict on the lesser included offense,

Quintana must point to some evidence indicating that he entered the home at a time other than the burglary. *See State v. Cox,* 826 P.2d 656, 662–63 (Utah Ct.App.1992) ("No evidence was presented suggesting that [the] defendant entered the property with intent to commit a crime other than theft."). Such evidence is absent here, and the trial court did not err when refusing to instruct the jury on the proposed lesser included offense.

¶ 10 Accordingly, we affirm the convictions.

¶ 11 I CONCUR: JAMES Z. DAVIS, Judge.

THORNE, Judge (concurring):

¶ 12 Although fingerprint evidence has never truly been put to the test in either the courtroom or the scientific community,[1] I concur with the decision to affirm Quintana's conviction. I would add, however, one element to the decision: trial courts should be directed to instruct juries about the existing weaknesses of fingerprint examiner training and identification protocol.[2]

¶ 13 Assuming, for the moment, that each fingerprint is unique and identifiable, most evidence points to a lack of consistent training of examiners and an absence of any nationally recognized standard to ensure that examiners are equipped to perform the tasks expected of them. *See* Jessica M. Sombat, Note, *Latent Justice: Daubert's Impact on the Evaluation of Fingerprint Identification Testimony,* 70 Fordham L.Rev. 2819, 2850–

1. *See generally,* Jessica M. Sombat, Note, *Latent Justice: Daubert's Impact on the Evaluation of Fingerprint Identification Testimony,* 70 Fordham L.Rev. 2819 (2002); Jennifer L. Mnookin, *Fingerprint Evidence in an Age of DNA Profiling,* 67 Brook. L.Rev. 13, 21 (2001) ("[E]ven if palm marks [and fingerprints] are different, it does not necessarily mean that experts can identify these differences with a high degree of accuracy.").

2. Although, as set forth by the majority opinion, *State v. Hamilton,* 827 P.2d 232 (Utah 1992), discusses fingerprint evidence as a form of circumstantial evidence, it discusses neither the subject's mechanics, nor its relevant strengths and weaknesses. *See id.* at 236–38. *Hamilton* instead focused on a proposed jury instruction concerning the timing of the placement of the

fingerprints, and the defendant's attempt to differentiate fingerprint evidence from other circumstantial evidence. *See id.* at 238 n. 2. Thus, *Hamilton* does not, in any way, preclude our requiring an instruction describing the nature of fingerprint examiner testimony as opinion, not fact, and directing the jury to examine the fingerprint examiner's training and credentials in determining whether or not to give credence to the examiner's testimony.

I concede that *Hamilton* concluded that fingerprint evidence does not share the problems inherent to eyewitness identification. *See id.* at 237. However, to the extent that this statement is presented as an imprimatur of fingerprint examination and fingerprint examiners, I would invite the supreme court to revisit this issue.

51 (2002) (highlighting the existence of disparate standards throughout the United States, and the world, for making a positive identification through fingerprint evidence). Under other circumstances, this might not be so troubling, but fingerprint evidence has been afforded a near magical quality in our culture. *See* Tara Marie La Morte, Comment, *Sleeping Gatekeepers: United States v. Llera Plaza and the Unreliability of Forensic Fingerprinting Evidence Under Daubert,* 14 Alb. L.J. Sci. & Tech. 171, 208–09 (2003) (highlighting studies that show the extraordinary value that jurors place on forensic evidence such as fingerprint examiner testimony). In essence, we have adopted a cultural assumption that a government representative's assertion that a defendant's fingerprint was found at a crime scene is an infallible fact, and not merely the examiner's opinion. *See* Jennifer L. Mnookin, *Fingerprint Evidence in an Age of DNA Profiling,* 67 Brook. L.Rev. 13, 28 (2001) ("From its earliest uses as legal evidence, fingerprint identification was generally presented in the language of certainty, rather than in the language of opinion."). As a consequence, fingerprint evidence is often all that is needed to convict a defendant, even in the absence of any other evidence of guilt. *See, e.g., id.* at 38–39.

¶ 14 Unfortunately, our societal acceptance of the infallibility of examiners' opinions appears to be misplaced. *See* La Morte, *supra,* at 207–08 (identifying several incidents where an identification, used to obtain a conviction, was a false positive identification, and stating that "fingerprint identification evidence is neither foolproof nor infallible"). Failure on any level clearly shows that examiner opinion is not infallible. Such fallibility, in light of society's trust in forensic certainty, opens our courts to a great risk of misidentification, and after examining the standards used to determine an examiner's proficiency, it is a risk that we should have understood long ago, and should never have allowed without certain precautions. Specifically, we

should instruct our juries that although there may be a scientific basis to believe that fingerprints are unique, there is no similar basis to believe that examiners are infallible. In the absence of any nationally accepted credentialing process, the jury may be in the best position to determine whether a purported fingerprint expert properly determined that a latent fingerprint, left at the scene of a crime, matches a defendant's fingerprint.

¶ 15 Until there is a nationally adopted certification system—ensuring examiner proficiency—and a nationally adopted minimum standard for matching latent fingerprints to known samples—minimizing the risk of misidentification—courts should ensure that juries are instructed that examiner testimony is informed opinion, but not fact.[3] However, there was no request for such an instruction in this case.

¶ 16 Accordingly, I agree with the decision to affirm Quintana's conviction.

---

**3.** The trial court provided the jury with a general instruction concerning the weight and value of expert testimony, and through this instruction charged the jury with determining the value of the testimony. However, due to the nature of the evidence involved in the testimony, I believe that the jury should have been specifically instructed that the *examiner's testimony* was opinion and not fact and that the jurors should examine the fingerprint evidence independently. It is vital that we remove the near mystical awe that fingerprints evoke, and replace it with a more cautious regard for forensic evidence and its overall lack of certainty.