2007 UT App 240
Tiffany Marie Evans, Crystal Lynn Evans, and Shawn Ross Evans, minors, by and through their natural parent, Debbie Evans, and guardian, Barbara Evans, the heirs of Robert Evans, deceased, Plaintiffs and Appellants,
v.
B. Langston, CRNA; et al., Defendants and Appellee.
Case No. 20060496-CA.
Utah Court of Appeals.
Filed July 6, 2007.
James W. McConkie II, Bradley H. Parker, James W. McConkie III, Jonathon T. Tichy, and Andrew B. Clawson, Salt Lake City, for Appellants.
Theodore E. Kanell and Joseph C. Alamilla, Salt Lake City, for Appellee.
Before Judges Davis, McHugh, and Orme.

OPINION
DAVIS, Judge.
¶1 Plaintiffs Tiffany Evans, Crystal Evans, Shawn Evans, Debbie Evans, and Barbara Evans (collectively, the Evanses) appeal from the trial court's rulings respecting expert testimony, which rulings ultimately resulted in the trial court entering a directed verdict in favor of Defendant Robert Langston. We affirm.

BACKGROUND[1]
¶2 Robert Evans died immediately after back surgery when his heart stopped due to "coronary artery atherosclerosis." The Evanses subsequently filed a wrongful death action against Pioneer Valley Hospital and the medical professionals who performed Mr. Evans's surgery. The complaint included Defendant, who was the certified registered nurse anesthetist (CRNA) working during Mr. Evans's surgery. The trial court granted summary judgment in favor of the hospital and most of the surgical team, but the Evanses' case against Defendant proceeded to trial. The Evanses alleged that Defendant breached the standard of care owed to Mr. Evans by failing to properly monitor and maintain Mr. Evans's blood volume and hematocrit, or red blood cell levels, during surgery.
¶3 Prior to trial, the Evanses filed a witness designation that identified Dr. Gabriel Gregoratos as their expert on causation. Defendant also filed his witness designation prior to trial, which included Dr. Gregoratos. Defendant then filed a notice of intent to use Dr. Gregoratos's deposition testimony at trial in the event the Evanses did not call Dr. Gregoratos as a witness. The Evanses objected to Defendant's use of the deposition, arguing that Dr. Gregoratos was merely a discovery witness. At a pre-trial hearing, the Evanses told the trial court that they had previously excused Dr. Gregoratos from appearing at trial. The court then concluded that Defendant could use Dr. Gregoratos's deposition because the witness was unavailable to Defendant.
¶4 During the Evanses' opening statement at trial, counsel for the Evanses told the jury that Dr. Gregoratos's testimony would be "read into the record" and that Dr. Gregoratos would tell the jury "that if Robert Evans had been given enough red blood cells to keep his blood cell concentration up at 27 or 30, that he would have survived the surgery." But the trial court ruled during trial that the Evanses could not read Dr. Gregoratos's deposition during their case-in-chief because it was "their responsibility . . . to have [Dr. Gregoratos] present to testify live." The trial court did rule, however, that if Defendant used Dr. Gregoratos's deposition, the Evanses could then use the deposition as well in rebuttal.
¶5 The Evanses also designated Dr. Peter Wright, an anesthesiologist, as their expert witness on standard of care and causation. Just before trial, Defendant filed a motion in limine, which sought to limit the testimony of Dr. Wright to standard of care and not to causation. Defendant sought to exclude Dr. Wright's causation testimony on the grounds that Mr. Evans died of a "cardiac event," which was "outside of the field of knowledge of an anesthesiologist." At trial, the Evanses opposed the motion and proffered Dr. Wright's qualifications to the trial court. The trial court ruled that Dr. Wright was not qualified to testify about causation, but that he could testify about "the standard of care for an anesthesiologist . . . [and] to fluid volumes and make-up and composition of blood cells." The Evanses then candidly told the trial court that "a directed verdict [might be] appropriate." The court then stated:
[Dr. Wright is] not going to be able to testify about causation. So that leaves, I guess, his teaching, his credentials, the interaction between anesthesiologists and CRNA's. I guess the reading of any records. . . . He has indicated premiere knowledge as to the reading of records and monitoring stuff. So he can do that. Then we'll take it from there.
Thus, while the court reaffirmed its position on the scope of Dr. Wright's testimony, it left open the possibility of revisiting the issue once Dr. Wright began testifying. The Evanses, however, chose not to put Dr. Wright on the witness stand.
¶6 Based on the trial court's rulings, Defendant moved for a directed verdict on the grounds that the Evanses had no expert witnesses to testify on causation. The trial court granted the motion for directed verdict. Later that day and before the jury was dismissed, the Evanses then moved for reconsideration of the trial court's prior rulings. At the hearing on the motion to reconsider, the Evanses again argued that they should have been permitted to read the deposition of Dr. Gregoratos and to question Dr. Wright about causation. The Evanses also sought to put Dr. Wright on the witness stand to again lay the foundation for his knowledge and qualifications relative to causation, but the trial court denied the Evanses' request. The trial court then denied the motion to reconsider and affirmed its prior rulings. The Evanses now appeal.

ISSUES AND STANDARD OF REVIEW
¶7 The Evanses argue that the trial court abused its discretion by refusing to allow Dr. Wright to testify as to the cause of Mr. Evans's death. The determination "as to who qualifies as an expert witness and the admissibility of the witness's testimony fall[s] within the discretion of the trial court. Absent a clear abuse of this discretion, we will not reverse the trial court's determination." In re G.B., 2002 UT App 270,¶10, 53 P.3d 963 (quotations and citation omitted). The Evanses also argue that the trial court erred by refusing to allow them to use the deposition of Dr. Gregoratos during their case-in-chief. Again, we will not disturb the trial court's determination as to the admissibility of deposition testimony absent an abuse of discretion. See Marshall v. Van Gerven, 790 P.2d 62, 63 (Utah Ct. App. 1990).

ANALYSIS

I. Testimony of Dr. Wright
¶8 The Evanses first claim that the trial court abused its discretion by refusing to qualify Dr. Wright as an expert witness capable of testifying about the cause of Mr. Evans's death. In essence, the Evanses contend that Dr. Wright was qualified to testify on causation because "Dr. Wright by virtue of his training, practice, and teaching in the field of anesthesiology, possesses specialized knowledge that would have helped the jury understand the cause of [Mr. Evans's d]eath." We disagree.
¶9 Rule 702 of the Utah Rules of Evidence states, in pertinent part, that "a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Utah R. Evid. 702. "In determining whether a particular witness qualifies as an expert, we have repeatedly held that trial courts are to be given a wide measure of discretion . . . ." State v. Butterfield, 2001 UT 59,¶22, 27 P.3d 1133 (alteration, quotations, and citation omitted). And "the critical factor in determining the competency of an expert is whether that expert has knowledge that can assist the trier of fact in resolving the issues before it." Depew v. Sullivan, 2003 UT App 152,¶42, 71 P.3d 601 (alteration, quotations, and citation omitted).
¶10 In Patey v. Lainhart, 1999 UT 31, 977 P.2d 1193, the Utah Supreme Court recognized that "`ordinarily, a practitioner of one school of medicine is not competent to testify as an expert in a malpractice action against a practitioner of another school.'" Id. at ¶18 n.2 (quoting Burton v. Youngblood, 711 P.2d 245, 248 (Utah 1985)). The exception to this general rule is that "'an expert witness belonging to one school may competently testify against a member of another school once sufficient foundation has been laid to show that the method of treatmentand hence the standard of careis common to both schools.'" Id. (quoting Burton, 711 P.2d at 248). Thus, a medical expert from one school of medicine may testify about the standard of care in another school of medicine if the expert "show[s] that he or she is knowledgeable about the applicable standard of care or that the standard of care in the expert's specialty is the same as the standard of care in the alleged negligent doctor's specialty." Dikeou v. Osborn, 881 P.2d 943, 947 (Utah Ct. App. 1994).
¶11 Although Patey properly lays out the law respecting the qualification of expert witnesses, it is factually distinguishable from the instant case. In Patey, the supreme court held that the trial court did not abuse its discretion by allowing an expert witness who practiced general dentistry to testify about endodontics. See Patey, 1999 UT 31 at ¶¶17-18. The court determined that the expert was qualified to testify on endodontic treatments based on his testimony "that one-fourth of his dental education related to endodontics; that he was licensed by the state to perform endodontic procedures; that he had maintained an ongoing educational study of both general dentistry and endodontics . . . ; and that endodontics constituted a substantial portion of his 36-year practice." Id. at ¶18.
¶12 Here, on the other hand, the medical examiner concluded that Mr. Evans died of coronary artery atherosclerosis, a problem relating to his heart and blood pressure. During the motion in limine hearing, the Evanses asserted that
Dr. Wright will testify that the person who knows the most about maintaining fluid levels and maintaining blood levels, and why that's important and what happens if you don't is an anesthesiologist. . . . They have to know what happens if there's a low hematocrit or low fluid levels, and what the complications will be and how to respond. So I would also indicate by training and by profession that Dr. Wright would be able to speak to that issue of causation.
The Evanses' proffer[2] regarding Dr. Wright's qualifications therefore revealed his knowledge and training as an anesthesiologist, but failed to show that Dr. Wright was qualified to testify about cardiology or coronary artery atherosclerosis. We therefore follow the general rule that "a practitioner of one school of medicine is not competent to testify as an expert in a malpractice action against a practitioner of another school." Id. at ¶18 n.2 (quotations and citation omitted). As such, the trial court did not abuse its discretion by determining that Dr. Wright was not qualified to testify regarding the causation of Mr. Evans's death.[3]

II. Deposition of Dr. Gregoratos
¶13 The Evanses' second argument on appeal is that the trial court erred by prohibiting them from reading from Dr. Gregoratos's deposition during trial. Defendant contends that the Evanses were properly prohibited from using the deposition because they procured Dr. Gregoratos's absence by expressly telling the witness that he did not need to attend trial. We agree.
¶14 Under rule 32 of the Utah Rules of Civil Procedure,
[t]he deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: . . . that the witness is at a greater distance than 100 miles from the place of trial or hearing,. . . unless it appears that the absence of the witness was procured by the party offering the deposition. . . .
Utah R. Civ. P. 32(a)(3) (emphasis added). We have previously determined in Marshall v. Van Gerven, 790 P.2d 62 (Utah Ct. App. 1990), that the term "'[p]rocurement' implies that there was some collusion in having witnesses remove themselves from the reach of subpoenas or to deliberately absent themselves from the jurisdiction." Id. at 64.
¶15 The Evanses contend that "what a party has or has not done to facilitate a deponent's presence at the trial is irrelevant for the purpose of determining if a party has `procured' the witness's absence under [r]ule 32(a)(3)(B) [of the Utah Rules of Civil Procedure]." We disagree. The Evanses rely on Marshall, where this court stated that for purposes of rule 32 analysis, "procuring absence and doing nothing to facilitate presence are quite different things." Id. at 64 (quotations and citation omitted). Although the Evanses properly state our precedent, we do not believe that the holding of Marshall should extend to the facts and circumstances of the instant case.
¶16 In Marshall, the trial court refused to allow the use of the deposition of a corporate president, even though the deponent "was absent from trial, was not a resident of Utah, and was beyond the subpoena power of the court." Id. at 63. This court reversed, holding that the appellants "made a sufficient showing to admit the deposition under Utah R. Civ. P. 32(a)." Id. at 65. In reaching our holding, we relied on the appellants' "specific[] represent[ations] to the court that none of the named parties had procured the deponent's absence." Id. at 64-65.
¶17 Here, on the other hand, the Evanses told their expert "we don't need you. Go ahead, plan another schedule. We don't need to have you here." Further, the Evanses objected to Defendant's use of Dr. Gregoratos's deposition, and only after the trial court ruled that Defendant could use the deposition did the Evanses seek to use it during trial.[4] Thus, the instant situation is patently different than the situation contemplated in Marshall, where a party simply "do[es] nothing to facilitate [the] presence" of a witness. Id. at 64 (quotations and citation omitted). Because the Evanses affirmatively caused their expert witness not to appear, we conclude that the trial court did not abuse its discretion by prohibiting the Evanses from reading from the deposition of Dr. Gregoratos during their case-in-chief.
¶18 Our holding comports with a trend among courts interpreting rule 32(a)(3)(B) of the Federal Rules of Civil Procedure, see Fed. R. Civ. P. 32(a)(3)(B), and analogous state rules, to require litigants to make a reasonable effort to bring out-of-state expert witnesses to trial.[5] See, e.g., Hanson v. Parkside Surgery Ctr., 872 F.2d 745, 750 (6th Cir. 1989) (determining that trial court did not abuse its discretion for denying request to read from deposition because "of evidence that [the party's] inability to procure the witness'[s] attendance at trial was at least in part due to [the party's] own lack of diligence"); Carter-Wallace, Inc. v. Otte, 474 F.2d 529, 536 (2d Cir. 1972) (requiring proponent of out-of-state expert to "attempt to secure the voluntary [trial] attendance of a witness who lives beyond the subpoena power of the court"); Caron v. General Motors Corp., 643 N.E.2d 471, 474-75 (Mass. App. Ct. 1994) (discussing Carter-Wallace and stating that by selecting an expert from out of state, a party "'procured' the absence of his expert from the Commonwealth in the sense that he voluntarily created a situation in which his expert would be out of the Commonwealth unless he should make arrangements for the expert's appearance at trial"). The reasoning for the requirement that litigants make an affirmative effort to bring an expert witness into trial before the witness will be declared unavailable under rule 32 is that
"[u]nlike the typical [fact] witness whose involvement with the case may depend on the fortuity of his observing a particular event and whose presence at trial is often involuntary, a party ordinarily has the opportunity to choose the expert witness whose testimony he desires and invariably arranges for his presence privately, by mutual agreement, and for a fee."
Caron, 643 N.E.2d at 474 (quoting Carter-Wallace, 474 F.2d at 536). We consider the foregoing authorities and reasoning persuasive. Therefore, the trial court did not err by refusing to allow the Evanses to use Dr. Gregoratos's deposition during their case-in-chief at trial.

CONCLUSION
¶19 The trial court did not abuse its discretion by refusing to qualify Dr. Wright as an expert witness capable of testifying on the issue of causation. In addition, the trial court properly prohibited the Evanses from using Dr. Gregoratos's deposition during their case-in-chief because the Evanses procured Dr. Gregoratos's absence from trial. We therefore affirm the trial court's grant of Defendant's motion for a directed verdict.
¶20 WE CONCUR: Carolyn B. McHugh, Judge, and Gregory K. Orme, Judge.
NOTES
[1] "In reviewing grants of directed verdicts . . . , we view all facts and the inferences drawn therefrom in the light most favorable to the nonmoving party." Stevensen v. Goodson, 924 P.2d 339, 342 (Utah 1996).
[2] Defendant asserts that the Evanses failed to make a proffer below regarding Dr. Wright's causation testimony, which, according to Defendant, precludes our review of this issue on appeal. However, because "we view all facts and the inferences drawn therefrom in the light most favorable to the nonmoving party," Stevensen, 924 P.2d at 342, we determine that the Evanses' statements to the trial court during the motion in limine hearing constituted a sufficient proffer.
[3] The Evanses also claim that the trial court erred by refusing to allow Dr. Wright to testify regarding his qualifications during the hearing on their motion to reconsider. The Evanses, however, had previously proffered Dr. Wright's qualifications to the trial court during the hearing on the motion in limine, during which they failed to show that Dr. Wright was qualified to testify about cardiology. Absent a claim that counsel had misunderstood or misrepresented the doctor's credentials, the trial court did not abuse its discretion in passing on what promised to be a duplicative recitation of Dr. Wright's credentials.
[4] The trial court ruled that the Evanses could use the deposition only if Defendant used the deposition, which he did not.
[5] We "recognize[] the persuasiveness of federal interpretations when the state and federal rules are similar and few Utah cases deal with the rule in question." State v. 736 N. Colo. St., 2005 UT 90,¶8 n.4, 127 P.3d 693 (quotations and citation omitted).